OSCAR LONG et al. v. GREENE COUNTY AB-
STRACT & LOAN COMPANY et al., Appellants.

**Division One, July 10, 1913.**

1. **USURY: Injunction: Remedy at Law: Reforming Contract.**
The purpose of Sec. 7182, R. S. 1909, was to fully protect the
debtor against usurious contracts, by authorizing him to recover
by suit from the creditor all sums of money paid by him
over and above the legal or contract rate of interest.   Under
it he can sue for the excess as often as interest is paid, or
he can let the usurious contract stand in full force until fully
executed, and then recover all excessive interest paid.   But
if he does not avail himself of the statute he has the equitable
right to have the contract annulled and canceled, but he can-
not have it reformed.   He cannot have an injunction to restrain
the selling of the property covered by a deed of trust given to
secure the usurious note until that note is reformed, since he
has an adequate remedy at law.

2. **USURIOUS CONTRACT: Reformation: Fraud.**   Fraud is no
ground for the reformation of a contract; it is only a ground
for its cancellation.   An allegation in the petition charging that
the usurious note was the result of imposition practiced on the
makers by the payee, as a result of his superior intelligence and
their ignorance, and its hidden and complicated provisions, and
charging no mutual mistake, will not authorize the reforma-
tion of the note.

3. ———: **Cancellation: Status Quo: Tender of Amount Due.**
A usurious note cannot be cancelled unless plaintiff tenders
back the money he received on the same, thereby offering to
place defendant *in statu quo*.

Appeal from Greene Circuit Court.—*Hon. Alfred
Page,* Judge.

REVERSED.

*W. R. Self* and *T. J. Murray* for appellants.

Equity will not entertain jurisdiction where there
is an adequate remedy at law.   Thias v. Siener, 103
Mo. 314; Davidson v. Dockery, 179 Mo. 687.   The plain-
tiffs had an adequate remedy at law.   The defendants

are admitted to be solvent. The laws give them an adequate remedy. Laws 1905, p. 173, sec. 3708. He who seeks equity must do equity. Ruppel v. Savings Association, 158 Mo. 622. Unless a judgment is responsive to the issues set up in pleadings it is erroneous, and motion in arrest of such judgment should be sustained. Schneider v. Patton, 175 Mo. 684; Jackard v. Anderson, 32 Mo. 188. One seeking to rescind a contract must as a condition precedent restore or offer to restore what he got by the contract, or refund its value. Culbertson v. Young, 86 Mo. App. 277; Robinson v. Siple, 129 Mo. 220; Ruppel v. Savings Association, 158 Mo. 621. The plaintiffs must tender into court the amount admitted to be due before an injunction will be granted to prevent the sale under deed of trust. Ferguson v. Soden, 111 Mo. 208; Price v. Empire Loan Association, 75 Mo. App. 556. A court of equity cannot reform an instrument unless there is a mutual mistake made in drafting the contract. Plaintiffs do not claim that there was a mutual mistake in making the contract. Therefore it cannot be reformed. It must be enforced as made or declared void. The decree attempted to make a new contract between plaintiffs and defendants. If an agreement is what the parties thereto intended it should be, equity will not interfere because they did not understand its legal effects. Corrivan v. Tillney, 100 Mo. 276; Henderson v. Dickey, 35 Mo. 120.

*Henry C. Young* for respondents.

(1) The second deed of trust was null and void because given for a wholly fictitious indebtedness, and it therefore constituted a cloud upon the plaintiffs' title which the court had a right to remove. The decree in that behalf is manifestly correct. (2) The equitable jurisdiction of the court was correctly invoked, if for no other reasons, upon the ground that the removal of clouds from titles and the correction

of fraud are among the most ancient subjects of equity jurisdiction. Superadded to this we have a case of mistake on the part of plaintiffs which was induced by the conduct of defendants. Smith v. Patterson, 53 Mo. App. 73; Janney v. Spedden, 38 Mo. 395; Harper v. Rosenberger, 56 Mo. App. 388; Pratt v. Clark, 57 Mo. 189; Dingle v. Pollock, 49 Mo. App. 479; Paris v. Haley, 61 Mo. 453; Stewart v. Caldwell, 54 Mo. 536; Bank v. Chambers, 96 Mo. 459; Dingle v. Pollock, 49 Mo. App. 479; Leeper v. Eylor, 111 Mo. 312; Swathen v. Swathen, 104 Mo. 201; Gardner v. Ercy, 99 Mo. 523; Verdin v. St. Louis, 131 Mo. 26; State ex rel. v. Phillips, 97 Mo. 331; Chrisman v. Linderman, 202 Mo. 613. (a) The deed of trust to secure a fictitious debt of $50 is certainly a cloud upon title; and the excess interest amounting to usury in the $612 note is certainly *pro tanto*, to the extent of such interest, also a cloud thereon. (b) The conduct of the chief managing officer of the defendant abstract company was of such a fraudulent character as to justify the interposition of a court of equity in behalf of respondents. Smith v. Patterson, 53 Mo. App. 66. (3) A court of equity has power to purge a contract of its usurious interest. Lewis v. Loan Assn., 183 Mo. 351; McDonnel v. Loan Assn., 175 Mo. 270; Ruppel v. Savings Assn., 158 Mo. 613; Storage Co. v. Glassner, 169 Mo. 38; Vandergriff v. Swinney, 158 Mo. 527. (4) Plaintiffs, by their bill, offer to do full equity. This is sufficient to give them standing in a court of equity. Ruppel v. Association, 158 Mo. 613; Kline v. Vogel, 90 Mo. 239. (5) Plaintiffs are entitled to have their contract reformed according to the true intent of the parties. And if by reason of fraud, mistake or accident, the contract fails to express that intent, equity will intervene and compel the doing of that which should have been done in the first instance. Bruer v. Pritchett, 163 Mo. 560; Blair v. Railroad, 89 Mo. 383; Miller v. Railroad, 162 Mo. 424.

WOODSON, P. J.—This was a suit instituted in the circuit court of Greene county by the plaintiffs, having for its object the injunction of defendant from selling two certain lots of ground situate in Block H in Eagle Heights Place, Springfield, Missouri.

A demurrer was filed to the bill by defendants, which was by the court overruled; and they, declining to plead further, judgment was rendered in favor of plaintiffs, enjoining the sale of the lots and reforming the contract, eliminating therefrom all usurious interest from the evidence of the debt and securities of the loan, purging the first note and deed of trust of all usury, and cancelling the second note and deed of trust because they were wholly based upon usury, otherwise leaving the loan and the securities thereof in full force and effect, except the monthly payments provided for in the deed of trust were to begin with and date from the rendition of the judgment, and not from the date of the notes and deeds of trust.

From this judgment of reformation and cancellation the defendants in due time and in proper form appealed the cause to this court.

This state of the record calls for a careful consideration of the bill or petition filed in the trial court, and upon which the judgment was predicated; and before we can do that intelligently the bill will have to be set out, which, omitting formal parts is as follows:

"Comes now the plaintiffs in the above entitled cause, and state that the defendant, the Greene County Abstract and Loan Company is a corporation duly organized and acting as such under the laws of the State of Missouri, and that the defendant W. E. Freeman is the duly qualified and acting sheriff of Greene county, Missouri. Plaintiffs further state that on or about the 17th day of January, 1908, they borrowed

of and from the Greene County Abstract & Loan Company of Springfield, Missouri, the sum of $400, and no other or further sum, and agreed to secure the same by deed of trust upon the following described lots and parcels of land situated in the county of Greene and the State of Missouri, to-wit: Lots two and three in Block H in Eagle Heights Place, an addition to the city of Springfield, Missouri. That at the time of securing said loan and making said agreement for the execution of the deed of trust upon the real estate hereinbefore described, the defendant the Greene County Abstract & Loan Company caused and procured the plaintiffs to make and execute a deed of trust upon said premises, which was so drafted and prepared as to demand and require of the plaintiffs a sum of money, in payment of said loan of $400, which was largely in excess of said amount and extortionate and usurious in this: That said deed of trust called for and required payment of a certain installment note, bearing date of January 17, 1908, amounting in the aggregate to $612, payable in seventy-two monthly installments of $8.50 each, beginning on the first day of March, 1908, and payable on the first day of each and every succeeding month thereafter, for a period of seventy-one months, until the whole of said sum of $612 should be paid off and discharged, and that it was expressly provided by the terms of said installment note that each and every one of said installments should, unless paid at maturity thereof, bear interest at the rate of eight per cent per annum. Plaintiffs further state that at the time when the deed of trust last hereinbefore referred to was executed, the defendant the Greene County Abstract & Loan Company causd and required plaintiffs, without any consideration whatsoever therefor, to execute an additional deed of trust bearing date on the 17th day of January, 1908, and recorded in Book 209, page 434, in the Recorder of Deeds' office of Greene

county, Missouri, for the purpose of securing a pretended but wholly fictitious indebtedness of fifty dollars, evidenced by the promissory note of the plaintiffs for that amount, due in six years after date and bearing interest at the rate of eight per cent per annum after the maturity thereof. Plaintiffs further state that either of the defendants, the Greene County Abstract & Loan Company, or the defendant T. J. Murray, is the holder and pretended owner of said notes for the sum of $612 and fifty dollars, respectively, and they are ignorant as to which of said two defendants is the pretended owner and holder of same, but they allege the fact to be that one or the other of said two defendants is such pretended owner and holder.

"Plaintiffs further state that the defendant W. E. Freeman is as aforesaid the acting sheriff of Greene county, Missouri, and claims to be acting trustee under the terms and provisions of the last deed of trust hereinbefore described given as aforesaid to secure the payments of the said note for fifty dollars. That under and by virtue of provisions mentioned and described of said last deed of trust it is provided that if default be made in the payment of the principal or the interest or any part thereof of the note or notes secured by the first deed of trust hereinbefore described for the sum of $612, and if such defaulted payments are made by the beneficiary of said second deed of trust, the indebtedness secured by said second deed of trust should at the election of holder of said note or notes immediately become due and payable, and the trustee named in the said deed of trust hereinbefore mentioned should proceed to sell the land therein described upon the same terms and conditions as if default had been made in the payment of the indebtedness secured by said second deed of trust.

"Plaintiffs further state that under the claim and pretense that default has been made in the payment

of certain of the installments past due and secured by the first deed of trust hereinbefore mentioned, and that the same have been paid by the beneficiary in said second deed of trust, and that the original trustee in both of said deeds of trust has refused to act in the foreclosure of the same, the beneficiary in said last mentioned deed of trust has caused and procured the defendant W. E. Freeman to assume the duties of acting trustee under the terms of said second deed of trust, and that said W. E. Freeman has advertised said property hereinbefore described for sale in pursuance of the terms and provisions of said deed of trust, and that he threatens and intends to sell the same at public vendue at the court house door in the city of Springfield, Missouri, on the 25th day of March, 1909.

"Plaintiffs further state that at the time of the execution of the said two deeds of trust they were and are now ignorant, illiterate and unaccustomed to business and business transactions involving the title of land and the execution of instruments of writing affecting the same, and that the defendant T. J. Murray was at the time of the execution of said deed of trust and is now the chief managing officer of the defendant the Greene County Abstract & Loan Company, and that said Murray is an attorney at law and well versed in the ways of business and business transactions pertaining to land titles. That the plaintiffs at the time of the execution of said deed of trust which obligated them to pay usurious interest upon the money borrowed as aforesaid by them, they thought and were caused to believe by the said Murray at the time that said notes were simply evidence of indebtedness for the sum of $400 with interest thereon at the rate of eight per cent per annum, payable in monthly installments of such payments as would amount in the aggregate at the end of seventy-two months to the sum of $400 with interest thereon at

the rate of eight per cent per annum, and that the defendant Murray well knew that said notes which were executed as aforesaid represented and provided for the collection of a usurious and illegal sum of money.

"Plaintiffs further state that on or about the —— day of ———————, 1908, they procured a purchaser for their said property hereinbefore described and he was willing, able and ready to pay to them the sum of $600 for the said property, and that plaintiffs thought that there would still be due and owing from them by said purchaser, after the discharge of their loan secured as aforesaid from the defendant, the Greene County Abstract & Loan Company, considerable sum of money, amounting to about $200, and that they called upon the defendant Murray, and offered to take up said loan with a part of said purchase money to be derived from said sale, but that said defendant Murray refused to receive the same, but demanded payment in full of the said sum of $612.

"Plaintiffs further state that they have paid upon said loan the sum of thirty-four dollars in four monthly installments, and that they have erected upon said real estate valuable and lasting improvements, all of which will be lost to them unless they are granted the relief herein sought.

"Plaintiffs further state that they are without means and have no money to tender and pay into court in discharge of said deed of trust, but that they are willing and now offer to do equity in full to the end that they may be secured in the rights to which they are justly and legally entitled in the premises and to the end that the defendants may be secured upon said real estate for the amount of money actually loaned to plaintiffs, with lawful interest thereon at the rate of six per cent per annum.

"Wherefore by reason of the premises the plaintiffs pray that said second deed of trust to secure the payment of said fifty dollar note be cancelled, set

aside and for naught held and esteemed, and that said fifty dollar note be cancelled and annulled, and that the defendant Freeman be enjoined and restrained from selling said real estate in compliance with the notice of sale hereinbefore referred to, which sale is advertised for the 25th day of March, 1909, and from selling or attempting to sell the same at any other time until the rights of the parties hereto have been respectively adjusted and determined, and that the defendant the Greene County Abstract & Loan Company and the said T. J. Murray be restrained from procuring or causing to be procured any sale under the terms and provisions of either of the said deeds of trust hereinbefore mentioned until the rights of the parties hereunto shall have been respectively ascertained and determined, and that said deeds of trust and said notes be reformed so that all provisions or agreements for the payment of usurious interest shall be eliminated therefrom, and that the cloud upon their title created by the said usurious interest charge be removed, and for such other and further relief as to the court may seem just and proper, and that the plaintiff have and recover his cost and a reasonable attorney's fee herein.''

Then follows the judgment, the substance of which has been previously stated, which, in extension, covers some six or seven pages of closely printed matter.

I. Counsel for appellants insist first, that the judgment of the circuit court is erroneous for the reason that equity will not entertain jurisdiction of a cause where there is a full and adequate remedy at law.

*Usury: Remedy at Law.*

It is admitted, or at least not denied, and the evidence tends to show, that the defendants are solvent and are capable of paying all just claims that existed or may be established against them.

Conceding, as we must, under the demurrer, that the loan in question bore usurious interest, yet under section 3708, Revised Statutes 1899, now section 7182, Revised Statutes 1909, the plaintiffs had an adequate remedy at law. That section, which embodies this and similar actions, provides that:

"No person shall directly or indirectly take, for the use or loan of money or other commodity, above the rates of interest specified in the three preceding sections, for the forbearance or use of one hundred dollars, or the value thereof, for one year, and so after those rates for a greater or less sum, or for a longer or shorter time, or according to those rates or proportions, for the loan of any money or other commodity. Any person who shall violate the foregoing prohibition of this section shall be subject to be sued, for any and all sums of money paid in excess of the principal and legal rate of interest of any loan, by the borrower, or in case of borrower's death, by the administrator or executor of his estate, and shall be adjudged to pay the costs of suit, including a reasonable attorney's fee to be determined by the court."

The very purpose of this statute was to fully protect the debtor against usurious contracts, by authorizing him to recover by suit from the creditor all sums of money paid to him over and above the legal or contractual rate of interest, which could not have been done prior to its enactment.

With the assistance of this statute, the debtor is enabled to sue, from time to time, or to let the usurious contract stand or remain in full force and effect until fully executed, and then sue for and recover all sums paid by him over and above the legal or contractual rate of interest authorized by said statutes, but if he did not avail of this statute, then he had the equitable right to have the contract annulled, set aside and cancelled, but not reformed for that reason, as will be presently shown.

We are, therefore, of the opinion, that if the plaintiffs wished to abide by the contract, excepting as to the usurious rates of interest, they should have paid the installments of the usurious interest, and after the payment of each, sued for the recovery of the same, or awaited the maturity of the obligations, and then have proceeded under the provisions of said section 7182, Revised Statutes 1909, for the recovery of the whole amount, in which event resort to a court of equity would not have been necessary for a full and complete restitution of the rights of the plaintiffs.

We, therefore, hold that plaintiffs had an adequate remedy at law for the redress of the wrongs complained of; that is, if plaintiffs wished to abide by the legal parts of the contract mentioned.

We are, therefore, of the opinion that the bill for this reason should have been dismissed.

II.   It is next insisted by counsel for defendants, that if plaintiffs did not wish to abide by the contract, which was voidable because of the usurious portions thereof, then they should have brought a bill for a rescission and cancellation of the contract and not for a reformation of the same.

In our opinion, this insistence is self-evidently sound, especially in the light of the axiomatic doctrine that a court of equity will construe and **Contract: Reformation: Cancellation.** reform a contract so as to express the real intention of the parties thereto, or annul and cancel the same, where it is illegal and void for any reason; yet it will not make a contract for the parties thereto or reform the same, except for the purpose of expressing the real intention of the parties.

In the case at bar, there is no allegation in the bill or pretense made in the brief of counsel for plaintiffs that the contract of loan, the notes and deed of trust, which are asked to be reformed, hiddenly providing for the payment of usurious interest, was the

result of a mutual mistake of the parties thereto; but upon the contrary, it is expressly charged in the bill that said hidden provision was inserted therein by defendants, under and by virtue of a fraudulent imposition perpetrated upon the plaintiffs by reason of the intelligence, learning and fraudulent designs of the individual defendants and of the agents of the corporate defendant, and through the ignorance and illiteracy of the plaintiffs.

This alone conclusively shows that there is no equity whatever in the bill and that the decree reforming the first note and deed of trust and cancelling the second was erroneous. But independent of that, through some process of reasoning, not made clear to my mind, counsel for, plaintiff insist that because of the fraud of defendants the court properly reformed the first note and deed of trust and correctly cancelled the second.

In the first place, fraud is not a ground for reforming a deed of trust, or any other contract for that matter, that I ever heard of. Fraud is a well-known ground for the cancellation of a contract, but not for its reformation.

But if the trial court proceeded upon the theory of cancellation, which it evidently did as to the second note and deed of trust, then the decree is erroneous for the reason that plaintiffs did not tender back the money they received on the notes, and thereby place the defendants *in statu quo*. This was an absolute bar to plaintiffs' right to a recovery in this case. In the case of Robinson v. Siple, 129 Mo. 208, l. c. 220, this court in discussing this question said:

"An insurmountable barrier to the defense, admitting every other allegation in their answer to be true, is the failure of defendants to return to plaintiff, and their inability to do so, the horses which they claim to have purchased from him. The rule is, that a party desiring to rescind a contract must tender

back whatever of value he has received, and place the other contracting party *in statu quo;* otherwise the contract will not be rescinded. This is in accord with the soundest rules of equity and justice, and is of universal application, unless the other party, by some act or omission of his, has rendered it impossible for the party desiring to rescind to return the property received by him. [Masson v. Bovet, 1 Denio, 69; Hammond v. Pennock, 61 N. Y. 145.]

"In the case in hand, defendants Siple, Siple and Beanblossom, were unable to rescind and return the property without the concurrence of their codefendant, W. H. Robinson, who not only refused to rescind the contract, but had taken and disposed of a number of the horses, so that it was impossible that plaintiff could have been placed *in statu quo.*

"In Melton v. Smith, 65 Mo. 315, SHERWOOD, J., in speaking for the court, said: 'Smith was in no condition to exercise the right of rescission, even had he elected promptly so to do, and for the obvious reason aforesaid, that holding only an undivided three-fourths in the property contracted to be conveyed, it was out of his power to have restored Atkinson to his *status quo,* an absolute condition precedent to the exercise of the right of rescission, whether exercised with or without the intervention of the courts.' [See, also, Estes v. Reynolds, 75 Mo. 563.]"

And in the case of Ruppel v. Missouri Guarantee, Savings and Building Association, 158 Mo. 613, l. c. 621, this court, in speaking through VALLIANT, J., said:

"But the court after finding that there was $1100 due the defendant on the plaintiffs' own theory and showing, decreed that the defendant's security be cancelled without requiring the plaintiffs to pay what they acknowledged they owed, and what they offered in their bill to pay. That is contrary to the course of equity jurisprudence. When the plaintiffs seek the aid of a court of equity to relieve them of what they

consider an usurious contract, the court will give them relief only on terms of equity and fair dealing. To allow the plaintiffs to retain what they justly owe and compel defendant to cancel its mortgage, is a transaction that cannot be commended in the forum of good conscience. The mere fact that defendant refused what the plaintiff offered to pay is no excuse for plaintiffs to keep what does not belong to them. Even a court of law would not tolerate that act; in law a tender to be available must be kept good. [Berthold v. Reyburn, 37 Mo. 587; Railroad v. Clark, 119 Mo. 357, l. c. 372; Voss v. McGuire, 26 Mo. App. 452.] The fact that a debtor has once tendered the amount due and it has been refused, may, if it is kept good, stop the running of interest, but it will not extinguish the debt, and if it has not been kept good it will not even stop the running of interest. But even at law the plaintiffs' offer in this instance did not amount to a tender, because it was not unconditional. It was an offer to pay so much on condition that defendant would receive it in full satisfaction of its demand, while the defendant was claiming that a large sum was owing. [Henderson v. Cass County, 107 Mo. 50.] The fact that Ruppel while on the witness stand said that he was willing to pay the defendant whatever the court should find to be due, could have no legitimate effect on the finding and decree; the case should be adjudged according to the rights of the parties when the suit was filed.

"Courts of equity deal with the subject of tender on the broad principles of justice. When a plaintiff comes into court asking equitable relief, if the relief is granted it will be upon such terms as are just and equitable. Generally the plaintiff is required to signify in his bill a disposition to do what is right, but whether he so signify or not the court will require him to do so as a condition of relief granted. In Landis v. Saxton, 89 Mo. 375, l. c. 383, this court, per

BLACK, J, said: 'Authorities cited do say that where a tender has been made of the amount due, its discharges the lien, still, without regard to the statute, a court of equity would not decree affirmative relief, such as the release or satisfaction of a mortgage or deed of trust or other lien, without payment of the amount due at the date of the tender. . . . Until plaintiff does make such payment he cannot have the deed of trust satisfied as prayed for in his petition.' In Kline v. Vogel, 90 Mo. 239, l. c. 245, per SHERWOOD, J., it is said: 'So, also, if a borrower of money on usurious interest seeks the cancellation of the instrument which evidences the debt equity refuses its aid unless upon the condition that payment be made the lender of what is bona-fide due him.' In Hudson v. Glencoe, 140 Mo. 103, l. c. 118, this court, per MAC-FARLANE, J., said: 'Our opinion is that a tender of the amount due on a mortgage debt, made after default, should not on principle discharge the mortgage, and should have no greater effect on the security than it has on the debt itself.' "

So in the case at bar, the bill concedes and states that the plaintiffs owe the defendants $400, yet at their request the trial court reformed the first note and deed of trust, and cancelled the second note and deed of trust, and that too, without any tender of the amount conceded to be due the defendants on said notes.

While it is true the plaintiffs stated that they were ready and willing to do equity in the premises, but in fact they never did so; and moreover, the trial court rendered the decree mentioned without requiring the plaintiffs to pay one cent of the sum due on the notes. But counsel for plaintiffs try to justify that action of the court, and uphold the decree by saying that there was nothing whatever due on the second note, and the court reformed the first, so as to secure the exact amount due thereon.

Counsel, however, seem to overlook the fact that the two notes and two deeds of trust constitute but a single transaction, and the mere fact that two notes and two deeds of trust, instead of one, were executed in pursuance to the usurious contracts makes no difference whatever, in so far as the legal question involved is concerned; and as to that part of the decree reforming the first note and deed of trust, it is sufficient to say it cannot stand because the petition does not state facts authorizing a reformation, nor was there any evidence introduced showing the plaintiffs were entitled to the same.

So viewing this decree from whatever standpoint you may, there is no legal principle upon which it can be supported.

We, therefore, reverse the judgment and dismiss the bill.

All concur, except *Bond, J.*, who dissents.