JENNIE W. BENNETT et al., Appellants, v. THOS. L. WARD.

In Banc, December 22, 1917.

1. **DELIVERY OF DEED.** Where the scrivener, at grantor's direction, took the deed, drawn according to her instructions, from her residence and delivered it to the grantee and he deposited it in a bank, where it remained until her death, and immediately thereafter grantee appeared with it at the Recorder's office and left it with him for record, the deed was delivered to the grantee.

2. **CAPACITY TO MAKE DEED.** If the grantor had sufficient mental capacity to understand the nature of the particular transaction and with such understanding voluntarily entered into it and consummated it by making a deed, she was not at the time mentally incapable of making the deed.

3. ———: **Use of Morphine: Cancer.** The fact that the grantor, a woman of more than ordinary intelligence and business ability and understanding the reciprocal obligations assumed by the grantee in consideration of the conveyance, was at the time afflicted with cancer and occasionally was given morphine to relieve her suffering, but in no wise rendered irrational either by the

disease or opiate, does not establish mental incapacity to make a deed conveying to her brother her home place.

4. **UNDUE INFLUENCE: Power to Arbitrarily Dispose of Property.** The owner of property has unlimited power to alienate it by deed or will, if the act is understandingly done and is free frcm coercion, fraud, mental incapacity and undue influence; and this power of arbitrary disposition of a capable and uninfluenced person pertains to absolute ownership, and may be reflected in deeds or wills exhibiting the loves, hates, partialities or caprices of the grantor or testator, which of themselves are not sufficient reasons for annulling the instruments.

5. ———: **Meaning.** By undue influence is meant that the conveyance when made did not reflect the grantor's wishes and intentions, but the designs and intentions of some one who controlled the grantor's acts.

6. ———: **Preference Among Kindred.** The intention of a childless aged widow to prefer a brother to two sisters in the disposition of her real estate, deliberately and clearly expressed in the deed, is not sufficient to defeat the conveyance, in the absence of evidence that the reason for the preference was extraneous domination of her mind.

7. ———: **Fiduciary Relation: Presumption: Acts of Kindness.** The facts that the childless widow, upon being informed by physicians that she was afflicted with cancer which would soon end her life, not wishing to go to a hospital, went to her brother's home and it was there decided that his two daughters would take her to her own home and care for her through her illness, which they did until her death a year later, and that the last three weeks of her life her brother was with her constantly and assisted her in some business transactions which she was unable to attend to, being acts of affection and kindness, do not suffice to create such a fiduciary relation as afford a just basis for a presumption of undue influence on the part of the brother, who was the grantee in the deed made in his absence three months prior to her death, by which after making gifts for the support and education of some minor step-grandchildren, she conveyed, in consideration of his many uncompensated acts of kindness and an agreement that he was to care and provide for her until her death, her real estate to him, to the exclusion of her two married sisters.

8. ———: **Cogent Proof.** In a suit to set aside and annul a deed between competent parties, absent any legal presumptions, the same degree of proof must be adduced as is prescribed by courts of equity when such a conveyance is sought to be annulled or its terms altered by oral evidence.

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,*
Judge.

AFFIRMED

*R. M. Robertson* and *Faulke & Brown* for appellants.

(1) The existence of undue influence may be shown
from the relationship and surroundings of the parties
at and previous to the time; the nature and character of
the contract, and any unreasonable and unfair advantage secured by it.  It devolves upon the respondent to
show "an honest and fair deal" in every respect.
Kirschner v. Kirschner, 113 Mo. 297; Martin v. Baker,
135 Mo. 504; Ennis v. Burham, 159 Mo. 518; Gay v.
Gillilan, 92 Mo. 251; Harvey v. Sullens, 46 Mo. 152; McFaddin v. Catron, 120 Mo. 273.  (2)  The evidence and
physical facts in this case show that Nannie Mace was
completely in the hands of, and under the control of, in
body and mind, her brother and his family, at the time of
the  making of this deed; and was not capable of measuring minds with him in the preparation and execution
of a contract of this character.  For more than a year
before she had been afflicted "with cancer in every organ; the womb, liver, breast and lungs; the hospital
surgeon, after an examination, refused to operate, and
says she only has about three months to live."  Reason tells us there could be no greater physical and mental pain and suffering than her condition from that
time until the day of her death was bound to produce;
and this deed in question could not have been her "voluntary act and deed" in her condition and under the
surroundings.  Heimeyer v. Heimeyer, 259 Mo. 534;
Cornet v. Cornet, 248 Mo. 184; Kincer v. Kincer, 246
Mo. 419.  (3)  The physical facts as shown by the condition of Nannie Mace, at the time this deed was executed; her letters, the two wills, and the peculiar wording and reasons given for its execution in the face thereof, shown conclusively that there was some undue influ-

ence at work at the time of its execution. It matters not what witnesses may testify to in this case, Nannie Mace's great affliction and dependent position, coupled wi'h these instruments in writing, tell the whole story; she was unduly influenced, if she knew it at all. It was not her mind framing these strange phrase as an excuse for making this deed as shown in the face thereof; it is unreasonable; it is not her free act and deed. Jones v. Belshe, 238 Mo. 524-540; Yosti v. Laughran, 79 Mo. 594; McClure v. Lewis, 72 Mo. 314; Hall v. Napenberger, 97 Mo. 509. (4) The physical condition of Nannie Mace from August 31, 1911, until her death on September 14, 1912, was as pitiable and helpless and dependent as can be imagined. She was stricken with "cancer of the ovaries," which for more than a year before the making of this deed had spread and entered all the most vital and sensitive organs of her body. All know that ailments of this character affect the mind, to some extent at least; and if this be true, then Nannie Mace's mind and will power was not in a condition to meet on equal terms the mind and will power of respondent in this case in a contract giving him every foot of real estate she owned. 2 White & Tudor's Leading Cases in Equity, p. 1156; Cadwalader v. West, 48 Mo. 483; Street v. Goss, 62 Mo. 226; Martin v. Baker, 135 Mo. 504; Gay v. Gillilan, 92 Mo. 250. (5) The past history of all the parties to this suit, the helpless and dependent condition of Nannie Mace in the hands of respondent and his family, taken in connection with the peculiar wordings of this deed, in explaining why it was made, show conclusively some undue influence, and that it was obtained by fraud. This deed "convicts itself." It spells "fraud" in many places. Major v. Kidd, 261 Mo. 618. "All these things point to a master mind." Mowry v. Norman, 204 Mo. 192; Roberts v. Bartlett, 190 Mo. 701; Myers v. Hauger, 98 Mo. 438. "When we consider the assiduous care used in order to make it appear to be her own free act, we are irresistibly forced to the conclusion that the attorney was acting in the interest of the defendant in carrying

forward their purpose in securing this property.'' Martin v. Baker, 135 Mo. 509. The record in this case clearly shows that the deed in question was never delivered. Scott v. Scott, 95 Mo. 319; Huey v. Huey, 65 Mo. 689; Sneathen v. Sneathen, 104 Mo. 209; Givens v. Ott, 222 Mo. 395; Murphy v. Gabbert, 166 Mo. 601; Standiford v. Standiford, 97 Mo. 231; Terry v. Glover, 235 Mo. 550.

*W. M. Bowker* and *Lee B. Ewing* for respondent.

(1) The finding of the trial court in this case is absolutely correct. There is no testimony to base a finding either that the grantor in the deed, Mrs. Mace, was of unsound mind, or had been induced to execute the deed by reason of undue influence on the part of Thomas L. Ward. Jones v. Thomas, 218 Mo. 508; Teckenbrock v. McLaughlin, 209 Mo. 533; Seibert v. Hatcher, 205 Mo. 83; McDermott v. Keesler, 240 Mo. 278; Wing v. Havelik, 253 Mo. 502; Lee v. Lee, 258 Mo. 599; Winn v. Grier, 217 Mo. 440; Turner v. Anderson, 236 Mo. 523; Gibony v. Gibony, 230 Mo. 106; Current v. Current, 244 Mo. 429. (2) Influence which is obtained over a party by kindness or affection so as to create a desire on the part of the party in favor of one to the exclusion of some one else, is not undue influence. Andrew v. Linebaugh, 260 Mo. 623; Turner v. Anderson, 236 Mo. 523; Seibert v. Hatcher, 205 Mo. 83. (3) Old age and sickness do not, in and of themselves, constitute incapacity to transact the business of devising or conveying lands. Lee v. Lee, 258 Mo. 599. (4) The fact that a daughter took a deed from her father, who was seriously afflicted with consumption and asthma, to lands worth $1500, upon the agreement to furnish him a home and give him personal attention during his life, was not any fraud, altho he was living with said daughter at the time; neither did any such circumstance create any fiduciary relations so as to raise a presumption of undue influence; and in such case it is held that there was no evidence tending to show the exercise or existence of undue influence, and that the deed could not be set aside

on any such ground—and that courts sit to enforce fair and just contracts—not to abrogate them. Lee v. Lee, 258 Mo. 599. (5) The influence exercised upon a party sufficient to invalidate a deed or a will, must be of such a nature and character as amounts to over-persuasion, coercion or force, destroying his free agency or will-power, as contradistinguished from the mere influence of affection or attachment or the desire of gratifying the wishes of one beloved, respected and trusted by him. Unequal distribution of property among one's kin is not sufficient to establish undue influence. Winn v. Grier, 217 Mo. 420. (6) Even though the mind of a party be weakened by disease, there must be substantial evidence that the influence of another operated and was undue to shape the will or deed before it can be held to be void because of undue influence, and it must be proven that such influence was exercised. Turner v. Anderson, 236 Mo. 523. (7) There was a good delivery of the deed in this case. Givens v. Marbutt, 259 Mo. 223; Seibert v. Highan, 216 Mo. 121; Chambers v. Chambers, 227 Mo. 262.

BOND, J.—This action is to set aside a deed conveying certain real estate in and near Stockton, Missouri, on the alleged grounds of non-delivery of the deed, mental incapacity of the grantor and undue influence.

On September 14, 1912, the grantor in the deed, Nancy Mace, a widow, died at the age of sixty-two years, leaving no children, her heirs at law being two sisters, Jennie Bennett, a resident of Texas, Mary Tyler and a brother, Thomas L. Ward, both residents of Missouri.

On September 27, 1911, a year before her death, Mrs. Mace executed a second will, substantially the same as one previously drawn, except that after making provision for the education of two step-grandchildren, a bequest to Mrs. Tyler of one dollar and certain small bequests, she gave the annual income of the residue of her estate to Mrs. Bennett and Thomas L. Ward, during their lives, with provision that if the latter died before Mrs. Bennett, his share should go to his wife, with remainders over to certain specified persons.

In August, 1911, Mrs. Mace became ill and upon examination by surgeons at Kansas City, was informed that she was suffering from cancer, which would end her life in a short time. From Kansas City she went to the home of her brother, Thomas L. Ward, the defendant herein, and it was then decided, as she did not want to go to a hospital, that her nieces Nannie and Corolla Ward would take her to her own home and care for her through her illness. When she reached her own home, Mrs. Mace requested her niece to write, advising her sister Mrs. Bennett of the seriousness of her illness and inviting her to come to Stockton to see her. Mrs. Bennett came, and it appears from the testimony in the record (denied by her) that soon after her arrival she expressed her dissatisfaction with Mrs. Mace's will, that she was not made executrix thereof, and hinted at various times that Mrs. Mace was mentally irresponsible. She finally quarreled openly with Mrs. Mace and left for her home in Texas. However, thereafter Mrs. Mace, through her niece, wrote several friendly letters to her. It further appeared, from a letter written by Thomas Ward to his sister Mrs. Bennett, after the death of Mrs. Mace, that some ill-feeling existed between them.

On June 24, 1912, Mrs. Mace executed a general warranty deed to all of her real estate to her brother, Thomas L. Ward. The consideration in the deed was an agreement by the grantee to pay a certain sum to the grantor's two step-grandchildren until they became of legal age; to pay a certain sum to Mrs. Bennett upon condition she receipted in full for her interest in Mrs. Mace's estate, with the further agreement that Thomas Ward was to care and provide for Mrs. Mace until her death.

The deed also contained this clause:

"The grantee herein, T. L. Ward, is my brother. In years past I have shared and enjoyed his home and received substantial and valuable assistance from him, for which he has received no moneyed compensation; during the last year he has attended to my business affairs, and his family have faithfully and affectionately cared for and nursed me during my protracted illness

within that time, and these considerations have influenced me, together with the foregoing expressed considerations, in the execution of this conveyance."

This deed was drawn by a Mr. Bannister, of Eldorado Springs, at the request of Mrs. Mace, who instructed him, after it was signed and acknowledged, to deliver it to her brother, Thomas L. Ward. The deed was duly delivered and Mr. Ward left it for safe-keeping at his bank at Eldorado Springs. After the death of Mrs. Mace the deed was taken to the Recorder's office and placed of record. This action was brought to set the deed aside. Judgment was for defendant and plaintiffs appealed.

II. There are only three questions which could possibly arise in this record: first, the contention by appellants that the deed, which it is the object of this suit to annul, was never delivered by the grantor to the grantee; second, that the grantor at the time of the execution of the instrument was mentally incapable of entering into a contract; third, that the deed was made as the result of undue influence upon the mind of the grantor at the time of its execution.

**Delivery of Deed.**

Taking these in order, the evidence as to the delivery of the deed is clear and complete. The scrivener who prepared it and witnessed the acknowledgment as a notary public, left the residence of the grantor with the deed in his pocket and delivered it to the grantee at Eldorado Springs. His testimony is clear, explicit and full as to these respects. The testimony of two bankers is to the effect that the grantee brought the deed into the bank of which they were officers, and deposited it there. As against the positive testimony of these witnesses, there is none of a contrary nature other than inferences sought to be drawn from the evidence tending to show that immediately after the death of the grantor, the grantee and his daughter who carried a black bag, appeared at the Recorder's office and the deed was taken out of the bag and handed to the Recorder and its filing duly noted. In these circumstances we must find

that the claim of appellants that the deed was not delivered is unsupported by the testimony on the hearing. Our conclusion is that the delivery of the deed and its acceptance by the grantee was not disproved by the evidence, and that plaintiffs have failed to establish that contention as a basis for their suit to annul the deed. [Schooler v. Schooler, 258 Mo. 1. c. 91, 92, and cases cited; Burkey v. Burkey, 175 S. W. 1. c. 624, and cases cited.]

III. As to the second point, incapacity of grantor, there is an utter failure of proof on the part of the plaintiffs (appellants) to establish that contention. On the contrary, the whole tenor of the testimony

Mental
Incapacity.
demonstrates that the grantor, Mrs. Mace, was a woman of more than ordinary intelligence and business ability, and there is nothing in the evidence which tends to show a want of comprehension on her part of the nature and effect of the deed when executed. The only basis for the inference attempted to be drawn in support of this contention, is the fact that she was suffering from a cancer and occasionally was given morphine to relieve her suffering. There is no hint in the testimony that she was rendered irrational either by her disease or its treatment, or that she was lacking in mental capacity to understand the reciprocal obligations assumed by the grantee in consideration of the conveyance of the property to him. On this point the rule is, as stated by WALKER, J., with reference to both deeds and wills, viz: "Did the testator or the grantor have sufficient mental capacity to understand the nature of the particular transaction and with such understanding voluntarily enter into and consummate the same?" [Masterson v. Sheahan, 186 S. W. 524.] Applying this test there is no evidence whatever in the record of a lack of capacity on the part of Mrs. Mace when she executed and delivered the deed.

IV. The only remaining inquiry is whether or not she was unduly influenced when she wrote the deed. The

owner of property has unlimited power to alienate it by deed or will, if the act is understandingly done and is free from coercion, fraud or lack of mentality or undue influence. This right of arbitrary disposition of a capable and uninfluenced person is a corollary of absolute ownership of property, and may be, and often is, reflected in deeds or wills exhibiting the loves, hates, partialities or caprices of the testator or grantor, which cannot be annulled for these reasons only. [Hayes v. Hayes, 242 Mo. l. c. 169, and cases cited.] The deed under review shows the purpose of the grantor to prefer a brother to two sisters in the disposition of her real estate. The intent to do this was deliberately and clearly expressed in the instrument. Such purpose, however, is not sufficient to defeat the deed in the absence of any evidence in the record, that the reason for the preference was extraneous domination of the mind of the grantor to the extent, that when the conveyance was made, it reflected not her intentions or wishes, but the different designs and intentions of some one who controlled her action. For this is what is meant by undue influence (Hayes v. Hayes, supra, l. c. 169; Masterson v. Sheahan, 186 S. W. l. c. 526, par. II), as to the existence of which there is a complete dearth of positive testimony.

It is, however, contended by the learned counsel for appellants, that the record and the terms of the deed disclose a fiduciary relation on the part of the grantee, which afforded a basis for a legal presumption of undue influence, which was unrebutted by the evidence adduced on the trial. A careful examination of the terms of the deed and other relevant testimony in the record, fails to satisfy us of the existence of such a fiduciary relation on the part of the grantee and the grantor as to afford any just basis for the presumption of undue influence. Shortly before her death the two daughters of her brother, defendant Ward, left their home and went to Mrs. Mace's home to care for her during her illness, and the last three weeks of her life her brother was with her constantly and doubtless assisted her in some business transactions which she was unable to

attend to as had been her custom before her affliction developed. We see nothing in these mere offices of affection and kinship which suffice to make presumptively invalid any recognition thereof by the recipient in the disposition of her property. She appears to have been an educated woman, intelligent and normal in her ways of life and sensitive to offices of kindness. We see nothing unnatural in a disposal of her estate evidencing her appreciation of the attentions and assistance which she received from her brother and his family during her last illness. That she had this thought in mind is clearly shown by the recitals of the deed as to considerations for it.

It must be borne in mind that this is an action to set aside and annul a conveyance by deed between competent parties and that, absent any legal presumptions, the same degree of proof must be adduced in support of such an attack as is prescribed by courts of equity when the terms of such conveyance are sought to be altered or the conveyance annulled by oral evidence. [Burkey v. Burkey, supra.]

Having reached the conclusion that no sufficient fiduciary relation existed to afford an inference of undue influence, and being unable to find in the entire record any evidence otherwise sufficient to invalidate it, there is no escape from the conclusion that the judgment of the trial court is manifestly correct and should be affirmed. It is so ordered. All concur, except *Williams, J.,* who dissents.