M. L. Stubblefield, Appellant, v. Edna Y. Husband.—106 S. W. (2d) 419.

Division Two, June 21, 1937.*

*S. P. Dalton* and *Bradley & Noble* for appellant.

*NOTE: Opinion filed at September Term, 1936, April 21, 1937; motion for rehearing filed; motion overruled June 21, 1937; motion to transfer to Court en Banc filed; motion overruled at May Term, 1937, June 21, 1937.

40

*John A. McAnally* for respondent.

TIPTON, J.—This cause was instituted in the Circuit Court of Pemiscot County, Missouri, was sent to the Circuit Court of Dunk-

lin County, Missouri, on change of venue, and that court entered a judgment decreeing the title in the respondent. Edna Y. Husband, to the following described real estate situated in Pemiscot County, Missouri, to-wit: The South half (S ½) of the Northwest quarter (NW ¼) and the Southwest quarter (SW ¼) of section thirty-one (31), township nineteen (19) North, range eleven (11) East.

This cause was originally filed on January 11, 1932, in the Circuit Court of Pemiscot County, wherein the Missouri State Life Insurance Company, a corporation, was plaintiff, and Henry S. Rolwing, Charles W. Shields, Corn-Cotton Land Company, a corporation, Edmund P. Melson, J. Dewitt Mills, and Edward G. Rolwing, Jr., administrator of the estate of Edward G. Rolwing, deceased, trustees of Dunk-Scot Land Company, a corporation dissolved by operation of law, and Edward G. Rolwing, Jr., administrator of the estate of Edward G. Rolwing, deceased, were defendants.

The petition was in two counts, one to cancel the deeds, and the other to determine title. At the time of filing the petition, the plaintiff filed a *lis pendens* in the office of recorder of deeds of Pemiscot County.

On November 4, 1931, the collector of Pemiscot County filed a petition entitled "The State of Missouri ex rel. Charles G. Ross, Collector, v. Henry S. Rolwing, E. P. Melson, St. Francis Levee District of Missouri, and the Little River Drainage District of Missouri," to enforce the collection of State and county taxes for the years 1928 and 1929 on the above-described real estate. On April 18, 1932, the circuit court of that county entered a judgment in that suit in the sum of $864.98, this sum being the amount of delinquent taxes for the years 1928 and 1929. A special execution was issued in that tax suit, and on December 29, 1932, the sheriff sold the above-described land to Edna Y. Husband for the sum of $3000. Thereafter, the sheriff of that county filed a bill of interpleader, naming the original defendants in the tax suit as parties. The cause was sent to the Circuit Court of Butler County on change of venue, wherein that court found that the surplus above the judgment and costs in the tax suit belonged to the defendant, Rolwing. The Springfield Court of Appeals affirmed the judgment of the circuit court in the bill of interpleader.

It is to be noticed that the original petition in this cause of action was filed subsequent to the filing of the petition in the tax suit, but prior to the entry of the judgment in that suit. After the date of the execution of the tax deed to the respondent, Edna Y. Husband, the Missouri State Life Insurance Company, as plaintiff, filed an amended petition in which the respondent was made a party defendant and in which it sought to set aside the tax deed to her for irregularities in the tax proceedings. The record shows that a third

amended petition was filed, however, it was not found in the files of this case. The cause was tried on what the appellant designated as the third amended petition, and in this petition it is stated that she had acquired by assignment all the right, title, and interest of the Missouri State Life Insurance Company to the land described in the original petition, and that she had also acquired all the interest of the General American Life Insurance Company in this cause of action. The petition further alleged that the appellant had acquired by proper deed of conveyance all the right, title, and interest of whatever kind and character in and to said land owned or held by each and all of the original defendants named in said cause, and that none of the original defendants in this cause claimed any interest in the land, and that no one now claims any interest in this land adverse to the appellant, except the respondent, Edna Y. Husband. The petition further alleged that the tax proceedings under which the respondent, Edna Y. Husband, claimed title was void. The prayer of the petition asks that the tax judgment rendered against the land in the tax suit, the sale thereunder by the sheriff, and the tax deed made to the respondent in pursuance of the sale, be canceled, set aside, and for naught held; that the court enter a decree declaring the plaintiff to be the fee simple owner of this land; and that the respondent be required to give an accounting for rents received for the land for the years 1933 and 1934.

During the trial of this cause, the appellant was given leave to amend her petition as follows: ''Then we offer to amend our petition by inserting a paragraph specifically alleging that the three trustees's deeds made on February 23, 1927, and heretofore introduced in evidence, being the trustee's deeds of Shields to the Dunk-Scot Land Company to the land in controversy, were erroneously made by the trustee to the Dunk-Scot Land Company and should have been made to the International Life Insurance Company.'' However, such amendment was not actually inserted in the petition.

The answer on which this cause was tried contained a denial of the appellant's interest in the land, and an admission that the respondent claimed title to the real estate. She further pleaded that the appellant be estopped from claiming title under the deed from Rolwing on the theory that Rolwing, her grantor, had received the excess from the tax sale.

To the answer of the respondent, the appellant filed a reply, denying all of the new matter set up in the respondent's answer.

Evidence presented at the trial showed that James F. Halley was the common source of title and that he executed three deeds of trust conveying the above-described land to Charles W. Shields as trustee for the Dunk-Scot Land Company, dated October 18, 1924, securing three notes aggregating $16,800. These notes, with other notes and

deeds of trust, were given to the International Life Insurance Company to secure a note in the sum of $35,000, which note was signed by the Dunk-Scot Land Company and Edmund P. Melson and Edward G. Rolwing. Melson and Rolwing owned the entire stock of the Dunk-Scot Land Company. On February 23, 1927, the above-described land was foreclosed by the trustee, Shields, and a deed executed to the Dunk-Scot Land Company. The International Life Insurance Company turned over to Melson notes secured by the deeds of trust on the above-described land, and he caused the land to be foreclosed. The trustee's deed, executed by Shields, named the Dunk-Scot Land Company as grantee. On December 31, 1927, Melson, as president of the Dunk-Scot Land Company, executed a deed to the land in question to the Corn-Cotton Land Company.

On August 25, 1928, by decree of the Federal Court at St. Louis, the affairs and assets of the International Life Insurance Company were taken over and later conveyed to the Missouri State Life Insurance Company. On March 9, 1929, the Missouri State Life Insurance Company foreclosed on the property secured by the $35,000 note, and on the same date entered into a contract and agreement with the Corn-Cotton Land Company, the Alluvial Realty Company, E. P. Melson, and E. G. Rolwing, whereby it was stipulated and agreed that in consideration of the last-named parties conveying certain lands to it, it would surrender all notes and cancel the same and deliver them to the last-named parties for the consideration of $1, and settle all differences on account of the $35,000 loan, and this was done.

On March 12, 1929, Melson filed a partition suit against Rolwing and the Corn-Cotton Land Company, claiming one-half interest in this land. This suit was later dismissed, and on December 28, 1929, the Corn-Cotton Land Company conveyed the land to Henry S. Rolwing.

On December 24, 1932, E. Merlin Rolwing, as guardian of the person and estate of Henry S. Rolwing, conveyed the land in question to Edward G. Rolwing, Jr. This deed was executed on an order of the Probate Court of the City of St. Louis. On June 7, 1934, Edward G. Rolwing and his wife, Gladys Rolwing, by quitclaim deed, conveyed the land in controversy to the appellant, M. L. Stubblefield.

On August 28, 1933, by order and decree of the Circuit Court of the City of St. Louis, the Missouri State Life Insurance Company was adjudged to be insolvent. The assets of that company were placed in the hands of the Superintendent of Insurance of the State of Missouri who, on September 7, 1933, conveyed it to the General American Life Insurance Company on order of that court. On October 4, 1933, the Missouri State Life Insurance Company assigned its interest

in this lawsuit to the appellant, the consideration for this assignment being that the Missouri State Life Insurance Company was indebted to W. H. Stubblefield, husband of the appellant, for services rendered it. The Missouri State Life Insurance Company. was dissolved on October 7, 1933, by order of that court. On January 10, 1934, the General American Life Insurance Company assigned its right to prosecute this cause of action to the appellant.

Other pertinent facts will be stated in the course of this opinion.

The appellant contends that the judgment of the trial court in decreeing title to the land in question in the respondent is erroneous because the title is vested in her through two sources: First, by virtue of a quitclaim deed from Edward G. Rolwing, Jr.; and second, by virtue of the assignment of the Missouri State Life Insurance Company and the assignment of the General American Life Insurance Company of their interest in this case. If she is right on either one of the claims, then the judgment of the trial court must be reversed.

We agree with the respondent that Edward G. Rolwing, Jr., would be estopped to attack the validity of the tax proceeding under which the respondent claims title. At the tax sale the land in question sold for $3000, and after paying the amount of the tax judgment and cost, there remained in the hands of the sheriff the sum of $1917.69. The sheriff filed a bill of interpleader so it could be determined whether this surplus belonged to Edward G. Rolwing, Jr., the Little River Drainage District, or the St. Francis Levee District. To this action, Rolwing set up a claim to the whole of this sum and his claim was upheld by the circuit court and that judgment was affirmed by the Springfield Court of Appeals. By his acceptance of this surplus, Rolwing was estopped to attack the validity of the tax proceedings. He had to go into court to obtain this surplus; to now say that he did not have full knowledge of the transaction would be ridiculous. If Rolwing was estopped to attack the validity, the appellant is also, as she is his grantee in a quitclaim deed executed after he obtained the surplus from the tax sale.

We think the facts in the case at bar are on all fours with the case of Procter v. Nance, 220 Mo. 104, 119 S. W. 409. In that case the title of record was in Robert Lee Hall and the suit was brought in the name of R. L. Hall. We held that the sheriff's deed conveying the interest of R. L. Hall was void and did not convey the title to the purchaser unless, by his subsequent acts, Hall ratified the sale. The amount of the bid exceeded the taxes and costs by $4.75, and the surplus was paid into the county treasury and paid out to the mother of Hall upon his written order. We further held that Hall thereby ratified the void judgment and was estopped to deny the validity of the sheriff's sale and deed. As the plaintiff in that

case was a purchaser from Hall with notice, he was also estopped; that the plaintiff had notice because he purchased subsequent to the time the sheriff's deed was recorded, even though he did not have actual notice that Hall had taken down the surplus, he must be held to have had constructive notice thereof. We also held that the plea of estoppel was not unavailing because Hall was an ignorant man and did not appreciate the legal significance of his act. By the very fact of his taking down the surplus, he must have known that there was a tax sale, and he cannot, because of his ignorance, be upheld in taking money with one hand and claiming the land with the other.

In the case at bar, the appellant's quitclaim deed from Rolwing was executed subsequent to the time the sheriff's deed was recorded. It therefore follows that the appellant did have constructive notice of the tax deed. We also believe that the appellant had actual notice of the tax sale and sheriff's deed; that fact was plainly set forth in the abandoned petitions filed in this cause. As previously stated, Rolwing filed a claim in court to establish his right to the surplus for the tax sale; therefore, the appellant cannot now say that Rolwing did not appreciate the legal significance of his act in receiving the surplus from the tax sale. The appellant is in no better position to attack the validity of the tax sale and sheriff's deed than Rolwing.

■ We are of the opinion that the court proceedings in the bill of interpleader filed by the sheriff were properly admitted in evidence. The respondent pleaded those facts in her answer as a defense to the appellant's cause of action.

From what we have said, it follows that the appellant is estopped to question the validity of the tax proceedings. Consequently, the appellant is not entitled to recover the land in question as grantee of Rolwing.

■ The appellant contends that she, as assignee of the Missouri State Life Insurance Company, is entitled to a decree vesting the title in her to the land in question. Her theory is that when the respondent purchased this land at the tax sale, she bought it with notice of the equitable title in the Missouri State Life Insurance Company, because at the time the sale was held a *lis pendens* had been filed in the office of recorder of deeds of Pemiscot County by the Missouri State Life Insurance Company. In other words, if the appellant is entitled to recover this land, it follows that the Missouri State Life Insurance Company, as plaintiff, would have been entitled to recover from Henry S. Rolwing, the record owner, at the time the original petition was filed in this cause.

From her argument in this court and from her briefs, it is the appellant's theory that the execution of trustee's deeds by Shields, dated February 23, 1927, to the Dunk-Scot Land Company was the result of a mistake, and that the grantee in these deeds should have

been the International Life Insurance Company. The assets of that company were later taken over by the Missouri State Life Insurance Company, who assigned its interest in this cause to the appellant.

We agree with the respondent that no such issue was made by the appellant's last-amended petition, the petition upon which the cause was tried. However, during the trial the court permitted the appellant to amend her petition by adding a new paragraph which has already been quoted, in which it is stated that "the trustee's deeds of Shields to the Dunk-Scot Land Company to the land in controversy, were erroneously made by the trustee to the Dunk-Scot Land Company and should have been made to the International Life Insurance Company."

We are not sure from this amendment whether the appellant sought to reform these trustee's deeds or cancel them, but as we view this case, it is immaterial since, in either instance, the degree of proof is the same. [Bennett v. Ward, 272 Mo. 671, 199 S. W. 945.] We do not believe that the appellant has sustained the degree of proof that would have justified the trial court to do either. We are treating this case as if the amendment had been actually made, as evidently it was tried on that theory by the trial court.

If a deed is sought to be reformed on the grounds of mutual mistake, or canceled on the grounds of mistake or fraud, the evidence to justify either must go beyond a mere preponderance of the testimony and remove all reasonable doubt. [Weissenfels v. Cable, 208 Mo. 515, 106 S. W. 1028.] Or, to express it in another way, the proof to justify such action on the part of the court must be so clear, convincing, and complete as to exclude all reasonable doubt in the mind of the chancellor. [Dougherty v. Dougherty, 204 Mo. 228, 102 S. W. 1099; Bross v. Rogers, 187 S. W. 38; Long v. Greene County Abstract & Loan Co., 252 Mo. 158, 158 S. W. 305; Employers' Indemnity Corp. v. Garrett, 327 Mo. 874, 38 S. W. (2d) 1049.]

"Although this court hears an equity case *de novo* on the merits, it is the rule to defer to the findings of the chancellor, where they are not against the weight of the evidence, especially where the witnesses personally appeared before him and their credibility is involved. [Blackiston v. Russell (Mo.), 44 S. W. (2d) 22; Friedel v. Bailey (Mo.), 44 S. W. (2d) 1024; Kent v. Crockett (Mo.), 274 S. W. 460.]" [Branner v. Klaber, 330 Mo. 306, 49 S. W. (2d) 169, l. c. 178.]

With these rules in mind, we have come to the conclusion that the trial court was correct in ruling that the appellant had no interest in the land in question as assignee of the original plaintiff, the Missouri State Life Insurance Company.

As previously stated, it is the appellant's contention that the

trustee's deeds which were executed by Shields should have named the International Life Insurance Company as grantee instead of the Dunk-Scot Land Company, as was done. To sustain her contention, the appellant relies wholly upon the testimony of E. P. Melson.

He testified that he was not an officer in nor connected with the International Life Insurance Company, but when the notes securing the deeds of trust became in default, he caused the foreclosure to be made. He testified as follows: ''Charles W. Shields, the abstracter over at Caruthersville was trustee in those three deeds of trust. He acted as trustee when they were foreclosed. I bid at that sale and was bidding to buy it in for the International Life Insurance Company. That was on all three of the deeds of trust. I don't know that anybody sent me down to Caruthersville to bid. I went over there and got the deeds of trust and laid them down and went down naturally to attend the sale. I went to Caruthersville in the court house. I saw Mr. Barkley who was connected with the International Life about the matter and got the papers from him. Barkley had charge of the real estate bookkeeping for the International Life Insurance Company.'' Yet he did not testify that he instructed Shields to execute the trustee's deeds to the International Life Insurance Company. In Shields' deposition he testified that, ''I was under the impression to make them to the Dunk-Scot Land Company.''

The statement of Melson that he bid the land in for the International Life Insurance Company is inconsistent with his subsequent actions and statements. He testified that he did not know to whom the deeds were delivered when they were executed; that he did not remember ever having seen the deeds; and that he and Rolwing owned the Dunk-Scot Land Company, and as president of that company he afterward executed a deed to this land to the Corn-Cotton Land Company. He stated, ''You ask me if I knew I owned the title I was conveying to the Corn-Cotton Land Company when I executed the deeds; I don't know now; it has been so long. I don't remember about the title. If I conveyed it, I probably thought I had title to it. I knew it was the same land that was foreclosed by Shields. I didn't know and didn't understand the matter is why I didn't at that time, tell the International Life Insurance Company about the mistake made and convey the land to International instead of the Corn-Cotton Land Company. Anyway I didn't do it.'' He further stated. ''I didn't claim at that time that the International Life Insurance Company or the Missouri State Life Insurance Company had any interest at all in this land, because I thought it belonged to us at the time.''

After Melson and Rolwing divided their property, and the title to this land was in Rolwing, Melson filed a partition suit claiming one-half of this land, which he later dismissed.

On March 9, 1929, the Missouri State Life Insurance Company

foreclosed the property secured by the $35,000 note, and on that date the Missouri State Life Insurance Company entered into a contract and agreement with the Corn-Cotton Land Company, the Alluvial Realty Company, E. P. Melson and E. G. Rolwing, whereby it was stipulated and agreed that if the last-named parties would convey certain land to it, it would cancel the $35,000 note. While it is true that this instrument did not specifically mention the land in question or the note that was held by the International Life Insurance Company, it, in general terms, did settle all differences on account of the $35,000 loan. The last-named parties, by this contract, did release both the Missouri State Life Insurance Company and the International Life Insurance Company from any claim for damages or redemption. At the time of the trial, Edward G. Rolwing was dead.

No employee of either the Missouri State Life Insurance Company or the International Life Insurance Company testified in regard to the foreclosure by Shields. There is no evidence that either company carried this land as part of its assets; nor is there any evidence that the International Life Insurance Company did not release these notes from the security of the $35,000 note. This note was canceled before the Missouri State Life Insurance Company filed this action.

It is strange indeed that at the trial Melson remembered that he bought this land in for the International Life Insurance Company, yet he did not tell Shields, the trustee, to make that company the grantee in the trustee's deed. He claimed half interest in the land and did not know about the fact that ''the trustee's deed should have been made to the International Life Insurance Company instead of the Dunk-Scot Land Company; it must have been after my lawsuit was filed and dismissed, *because I didn't know the title until I got through this lawsuit.*'' Barkley had charge of the real estate for the International Life Insurance Company, and if that company had not intended to release these notes it seems odd that Barkley did not look after the foreclosure instead of Melson whose interest was, in fact, adverse to that company.

There is also some evidence that there apparently developed a bad feeling between Rolwing and Melson in the division of the property. There is no doubt but that the present litigation was started at his instigation, and there is some testimony in the record that Melson told the officers of the Missouri State Life Insurance Company that if they would let his attorney file this lawsuit he would furnish the testimony.

As we must defer to the findings of fact by the trial judge, we have come to the conclusion that his findings that the appellant had no interest in this land is amply supported by the evidence.

From what we have said, it follows that the judgment of the trial court must be affirmed. All concur.