SHROPSHIRE et ux. v. COMMERCE FARM CREDIT CO. et al. (No. 732–4324.)

(Commission of Appeals of Texas, Section A. Feb. 10, 1926.)

1. Usury ⬅️42—Interest on loan usurious when contract requires payment in excess of 10 per cent. for any year of term of loan.

Under Const. art. 16, § 11, and Rev. St. 1925, art. 5073, fixing legal rate of interest at 10 per cent., if maximum of 10 per cent. is exceeded for any year of term of loan, rate is usurious.

2. Usury ⬅️50—Interest exaction of 12 per cent. for first 5 years and 6 per cent. for last 5 years of 10-year loan usurious as exceeding 10 per cent. legal rate.

An interest exaction on a 10-year loan of 12 per cent. for the first 5 years of loan and 6 per cent. for last 5 years is usurious, not being the equivalent of a 9 per cent. interest, for, taking into consideration value of use of excess payments made during first 5 years of loan, amount of interest, properly computed, exceeds 10 per cent. legal rate as provided by Const. art. 16, § 11, and Rev. St. 1925, art. 5071.

3. Usury ⬅️50—Illegality of usurious contract cannot be avoided by applying excess interest on principal, contrary to intention of parties.

Where a contract provided for 12 per cent. interest on loan for first 5 years and 6 per cent. for last 5 years, the illegality of such a contract could not be avoided by applying excess of legal amount for first 5 years upon the principal, thus bringing interest rate within legal requirements, for such method, though it might have been agreed upon by parties, would be a treatment of the matter contrary to the intention of the parties, for the purpose of upholding a contract otherwise illegal.

4. Usury ⬅️45—Under statute, maximum legal interest cannot be reserved in advance.

There is no express authority given in Rev. St. 1925, art. 5071, to reserve in advance maximum legal interest at the rate of 10 per cent. per annum; all implications of such right being negatived by statutory definition of interest (article 5069), and by the affirmative declarations that all contracts having greater rate are void.

5. Usury ⬅️138—Under statute, penalty for double amount of interest paid recoverable against lender where rate usurious.

Where contract provided for 12 per cent. interest for first 5 years and 6 per cent. for last 5 years, such contract was usurious, and borrower, under Rev. St. 1925, art. 5073, could recover as penalty against lender double amount of money paid as interest.

6. Usury ⬅️95—Though interest contract void as usurious, debtors who have not tendered payment of principal of debt not entitled to cancellation.

Debtors held not entitled to cancellation of interest contract evidencing a loan, where they had not tendered payment of the principal of the debt, even though interest contract was usurious.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by J. E. Shropshire and wife against the Commerce Farm Credit Company and others. Judgment for defendants was affirmed by the Court of Civil Appeals (266 S. W. 612), and plaintiffs bring error. Judgment of the Court of Civil Appeals and district court reversed, and judgment rendered for plaintiffs.

M. J. Baird and Oxford & Oxford, all of Plainview, for plaintiffs in error.

Williams & Martin, of Plainview, and Terrell, Davis, Huff & McMillan, of San Antonio, for defendants in error.

Statement of the Case.

NICKELS, J. The defendants in error (who were defendants in the trial court), in their answer, thus describe the basic transaction now before the Supreme Court:

"These defendants further allege: That the plaintiffs made application for the loan of the money, and that the execution of all of the notes and of the deeds of trust were parts of the same transaction, and all were executed at the same time, said transaction being a contract between said plaintiff and the defendant Commerce Farm Credit Company, by which the said Commerce Farm Credit Company agreed to loan the plaintiffs the sum of $4,200 for a term of 10 years, at the interest rate of 9 per centum per annum from date until maturity, for the term of the loan; it being agreed as a part of the contract that the principal note should bear interest at 6 per centum per annum, and that the other 3 per centum should be evidenced by other notes, made payable in 5 years' instead of 10 years' time, and that the payment thereof should be secured by valid liens upon the property of said plaintiffs. That, in pursuance of such agreement, the notes herein involved were executed and acknowledged, and all were delivered by the plaintiffs to the Commerce Farm Credit Company, in exchange for which said company gave to plaintiffs the sum of $4,200."

The testimony fairly indicates that Shropshire and wife so understood the matter and acted upon that understanding at the time. As a part of the agreement, Shropshire and wife executed a "principal note" (or bond) of date August 2, 1921, for $4,200, due and payable August 2, 1931, and, also, executed ten notes (called coupons or bonds) of date Au-

gust 2, 1921, each for the principal sum of $252, due and payable, serially, August 2, 1922, to August 2, 1931, inclusive, and five (other) notes (called coupons or bonds) of the same date, each for the principal sum of $252, due and payable serially, August 2, 1922, to August 2, 1926, inclusive. The "coupon notes" provided for interest at 10 per centum per annum from maturity, payable annually. Shropshire and wife also executed a deed of trust on certain lands owned by them in Hale county to secure payment of the "principal note," for $4,200 and another deed in trust on the same land to secure payment of the second series of "coupon notes." The deeds in trust declare the purpose of the liens to be to secure payment of the note (bond) for "the sum of $4,200, payable on the 1st day of August, 1931, with interest thereon from date until maturity as therein specified, payable annually, according to the interest coupons, * * * and both principal and interest bearing interest after maturity, whether matured from lapse of time or default," and provide that, "if default shall be made in the payment of the principal or any installment of interest upon said bonds, or any of them, and any one of the said sums remain unpaid, * * * then, at the option of the legal holders of said bonds, the same with interest," etc., "shall, without notice, become due and payable."

The first of each series of the "coupon" notes, aggregating $504, were paid by Shropshire and wife November 11, 1922, and the second of each series, aggregating $504, were paid by them on September 20, 1923. The "coupon" notes provided for interest from maturity at 10 per cent. per annum, payable annually, and on November 11, 1922, Shropshire and wife paid $16.10, and on September 20, 1923, they paid $7.15, representing such "interest." These payments were made in Hale county, upon demand of the other parties.

The form (i. e., the various notes or "bonds" and the deeds in trust) given the matter, was such as was required and dictated by the Commerce Farm Credit Company, and that, together with the company's subsequent demands, etc., is taken as indicative of its purpose and intent.

Shropshire and wife filed this suit, and therein sought recovery of $2,030.60, and sought also cancellation of said "interest contract," upon the ground that usurious interest had been provided for in the papers representing the transaction, of which alleged unlawful interest the other parties had "received and collected" $1,015.30. The trial court and the Court of Civil Appeals (266 S. W. 612) held that the transaction was free of usurious taint, and accordingly denied all relief prayed.

## Opinion.

There is, as will more fully appear subsequently, a material difference between the interest contract evidenced by the instruments signed by Shropshire and wife and the contemporaneous understanding between the parties as described in the excerpt from the answer, quoted in the statement above. Shropshire and wife, according to the pleading and the proof, understood they were to get the use of $4,200 for 10 years, at an interest rate of 9 per centum per annum—such was the lender's promise. The notes, etc., were prepared by the lender, and they are in such form as it exacted, so that they must be taken as evidence of what the lender intended; if they exhibit usury, the lender must suffer the legal consequence.

The interest contract, embodied in the notes, etc., require a payment of $504 at the end of each of the first 5 years, a total of $2,520, which is the equivalent of 12 per centum per annum, and a payment of $252 at the end of each of the last 5 years, a total of $1,260, the equivalent of 6 per centum per annum. The maximum rate prescribed by the Constitution, § 11, art. 16, and the statute (article 5071, R. S. 1925), being 10 per centum per annum, the exactions thus provided for are usurious, at all events prima facie, and, we believe, absolutely. This is true for two reasons:

[1] (1) The lawful maximum of 10 per centum per annum is exceeded when the contract requires payment of 12 per centum for any year of the term. Two elements enter into the standard of measurement, viz. a year (per annum) as the unit of time and 10 per centum of the principal borrowed as the amount for that period. The terms employed in the Constitution and statute are plain, and, while cases may be found to support a contention against the position here taken, we believe they are not subject to a meaning different from that above given.

[2] (2) An interest exaction of 12 per centum for each of the first 5 years, and of 6 per centum for each of the last 5 years, is not the same thing as an exaction of 9 per centum per annum for the whole 10-year period; the interest, under such an arrangement, exceeds 10 per centum per annum for the 10-year period. This is so, because the exact amount of money ($3,780) paid by the borrower to the lender (called "interest") does not embrace all of the compensation to the lender for the use, forbearance or detention of the money loaned. The minimum value of the use of money, as agreed upon by the parties for the period in question, is 9 per centum per annum. It is plain that the lender here secured (rather, contracted to secure) the use of some money belonging to Shropshire and wife (i. e. the annual payments in excess of interest then earned) concurrently with the use by Shropshire and wife of a larger amount of the lender's money. The value of the use thus obtained by the lender must be charged to it, else the statutory definition of interest (article 5069,

R. S. 1925; Parks v. Lubbock, 51 S. W. 322, 92 Tex. 635) will be ignored. The mere fact that the lender required this arrangement of the interest payments demonstrates the proposition that there was in it a substantial element of value, from its viewpoint, over and above the value to it of an ordinary plan whereby the borrowers, each year, would pay 9 per centum of the amount borrowed. Because of the agreement as to the minimum value of use of money, we may take 9 per centum per annum as the basis of calculating the charge which must be made against the lender in order to ascertain the true compensation exacted by it. Upon this basis, and taking into account all elements of compensation to the lender, the following calculation, based upon the facts, will disclose the inevitable effect upon the parties and the concomitant usury:

The borrowers used $4,200 00 from 8/2/21 to 8/1/22.
  378 00 interest at 9% earned same period.

$4,578 00
  504 00 paid by borrowers 8/1/22.

The borrowers used $4,074 00 from 8/1/22 to 8/1/23.
  366 66 interest at 9% earned same period.

$4,440 66
  504 00 paid by borrowers 8/1/23.

The borrowers used $3,936 66 from 8/1/23 to 8/1/24.
  354 30 interest at 9% earned same period.

$4,290 96
  504 00 paid by borrowers 8/1/24.

The borrowers used $3,786 96 from 8/1/24 to 8/1/25.
  340 83 interest earned at 9% same period.

$4,127 79
  504 00 paid by borrowers 8/1/25.

The borrowers used $3,623 79 from 8/1/25 to 8/1/26.
  326 14 interest earned at 9% same period.

$3,949 93
  504 00 paid by borrowers 8/1/26.

The borrowers used $3,445 93 from 8/1/26 to 8/1/31.
  1,550 67 interest at 9% earned for same period.

$4,996 60 amount required to repay the unpaid principal and interest thereon at 9% per annum for its use during the last 5 years.

But, per the contract, during and at the end of, the last 5 years, the borrowers are required to pay $1,260 "interest" and $4,200 "principal"—a total of $5,460, as against the $4,996.60 last shown. The payments required, therefore, exceed those which would have been required on the true 9 per centum per annum basis by the sum of $463.40; this excess amounting to 1$\frac{1}{10}$ (plus) per centum per annum on the original principal of $4,200 for the whole 10-year period, or 2$\frac{2}{5}$ (plus) per centum per annum on the original principal for the last 5-year period, or 2$\frac{68}{100}$ (plus) per centum per annum on the true principal of $3,445.93 for the last 5-year period.

The stipulation for interest at the rate of 12 per centum per annum for each of the first 5 years, prima facie at least, contravenes the Constitution and statute which restricts lawful interest to a maximum of 10 per centum per annum. We believe that to be the absolute effect, and so hold. But, if it be thought that the apparent usury may be avoided by taking account of the smaller payments during the last 5 years, the results shown last above demonstrate: (a) If the interest exacted (counting as "interest" the agreed value of the use of the borrower's money represented by the excess in the annual payments) be spread out evenly over the whole 10-year period, its true rate is a minimum of 10$\frac{1}{10}$ (plus) per centum per annum; (b) if the 10-year period be divided into halves (as was formally done by the parties), then the interest exactions amounted to 12 per centum per annum (on the original principal) for the first half or 12$\frac{68}{100}$ per centum per annum (on the true principal) for the last half. The value of the use of the excess of payments made during the first 5 years cannot be ignored, and, when it is taken into account, the effect is merely to shift the usury from the first to the last half of the period or to attach it, in a lesser degree, to each year of the whole period. And this but illustrates the fact that the usurious taint inheres in the contract for interest as a whole.

[3] The illegality of the contract is sought to be avoided upon the ground that the parties lawfully could have agreed upon 10 per cent. interest for each of the 5 years, and that, in calculating the amount (of the $504 payments) to be applied upon the principal each year, 10 per cent. interest ($420) should be deducted, thus leaving $84 out of each annual payment to be so applied. If this were allowable, the resulting shift of 2 per centum to the last half of the 10-year period would leave something less than 10 per centum per annum on the true principle for each of those years. But this is not permissible, because it would require treatment of the matter contrary to the intention of the parties, for the purpose of upholding a contract otherwise illegal. The contract as made, plus what the law writes into it, and not that which might have been made, is the transaction whose legality must be determined.

The honorable Court of Civil Appeals suggests the proposition that our law does not

make it "unlawful to collect interest in advance." It says:

"Even where the highest allowable rate of interest is collected in advance on short-time loans, and a year has been suggested as the limit under this rule, the transaction is generally held not to be usurious. Webb v. Pahde (Tex. Civ. App.) 43 S. W. 19; Geisberg v. Mutual Bldg. & Loan Ass'n (Tex. Civ. App.) 60 S. W. 478, 482; 27 R. C. L. pp. 225, 226."

Given a concrete form, the proposition may be thus stated: Doe borrows, or thinks he borrows, $100 for a year, from Roe, and executes his note for $100, payable at the end of the year, without interest or with interest after maturity; Doe gives Roe $90 and keeps the other $10 as "interest in advance." There is not room for debate about the fact that Roe has the use of $90 for one year, and for that use he pays $10, or 11⅑ per centum per annum. This fact is not disputed (as indeed it cannot be) by any court whose opinion we have seen, and its indubitable conflict with a law such as ours, which definitely prescribes 10 per centum per annum as the lawful maximum rate, cannot be ignored or avoided. The proposition advanced by the Court of Civil Appeals has apparent support in cases from many jurisdictions, some of which are cited in its opinion, and many others are collated in 4 L. R. A. 463, 29 L. R. A. 761, 33 L. R. A. (N. S.) 1196, and 27 R. C. L. 225, 226, but the support, in most instances, is seeming and not real, because of the vital difference (in this respect) between our statute and that of 12 Anne or the Statute of Henry VIII or that of any state whose law is patterned after the English law; e. g., Arkansas—Bank of Newport v. Cook, 30 S. W. 35, 60 Ark. 288, 29 L. R. A. 761, 46 Am. St. Rep. 171.; Illinois—McGill v. Ware, 5 Ill. (4 Scam.) 29.

[4] Those statutes generally fix a maximum rate as the measure of either one or the other of two things, namely, (a) interest "reserved," or (b) interest "to be paid." In such cases, and obviously, there is statutory authority to "reserve," or "take out in advance," interest at the maximum rate. That authority, perforce, justifies such rate of interest, in excess of the figure otherwise named as the maximum, as is represented by the result obtained by using the amount reserved as a dividend and the amount actually used by the borrower as one divisor and the number of years the money is to be used as an additional divisor; that result being somewhat larger, if the "reservation" is at the so-called maximum rate, than the figure otherwise prescribed as the allowable rate per year. But there is not, in our statute, any such expressed authority to "reserve" interest at the rate of 10 per centum per annum, and all implications of that right are negatived by the statutory definition of interest (article 5069) and by the affirmative declarations that all contracts for a greater rate are void. So far as the decisions of our Supreme Court go, this question appears to be res integra, and that is true also of the history of the Courts of Civil Appeals, except for the holding in this case and that in Webb v. Pahde, 43 S. W. 19. The point was not decided in Geisberg v. Mutual Bldg. & Loan Ass'n (Tex. Civ. App.) 60 S. W. 478, cited by the Court of Civil Appeals here. In Webb v. Pahde no authorities are cited to the proposition, no specific notice of the Constitution or statutes is taken, and no reasoning given to support the ruling; and, while the opinion was prepared by a jurist whose ability is beyond question and whose fame rests upon sure ground, we are constrained to believe that the deliberate omission of authority to "reserve" interest, at the highest rate, from our law must have escaped his consideration. Such a provision had been in the English statutes, and in those of many of the states for a great many years before our Constitution or statutes were adopted. The failure to embrace in it our law, therefore, must have been purposed. In our opinion, its absence precludes all support for the idea advanced in Webb v. Pahde or by the Court of Civil Appeals in this case. That interest may lawfully be paid in advance if a rate sufficiently lower than 10 per centum per annum be used to calculate its amount, so that, in fact, the lender does not, directly or indirectly, receive more compensation for the use, forbearance, or detention of his money than 10 per cent. per year, is conceded. But the true rate selected by the lender here, in any permissible view of the effect upon the parties, exceeds the maximum named.

[5, 6] It results that Shropshire and wife were entitled to judgment for the sum of $2,030.60, by way of penalty. Article 5073, R. S. 1925. It results, also, that the contract stipulating for interest throughout the term is void (section 11, art. 16, Constitution); yet it does not follow that Shropshire and wife are entitled to the equitable relief of cancellation, since they have not tendered payment of the principal of the debt. It is true, the principal, per the terms of the contract, is not due, and they are not in default as to its payment. Still defendants in error have been deprived of all compensation for the use of the $4,200 for the 10-year period, and required, in addition, to pay Shropshire and wife an amount equal to the interest heretofore paid by them. We do not believe a court of equity may properly decree the additional relief of cancellation with the matter in its present situation. Carden v. Short (Tex. Civ. App.) 31 S. W. 246; Turner v. Bank, 28 So. 469, 126 Ala. 397; Long v. Greene Co., 158 S. W. 305, 252 Mo. 158; Patterson v. Wyman, 170 N. W. 928, 142 Minn. 70; Liles v. Bank, 107 S. E. 490, 151 Ga. 483; Moncrief v. Palmer, 114 A. 181, 44 R. I. 37, 17 A. L. R. 119. The rights of the parties are such as that, if, and when, Shropshire and wife shall in good faith

offer to pay the principal debt, they may thereafter properly secure cancellation.

We recommend reversal of the judgments of the district court and of the Court of Civil Appeals and the rendition of judgment for plaintiffs in error and against defendants in error for the sum of $2,030.60, with interest thereon from date of such judgment at the rate of 6 per centum per annum, and denying all other relief prayed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for plaintiffs in error, as recommended by the Commission of Appeals.