### ABILENE CHRISTIAN COLLEGE v. WRIGHT. (No. 2087.)

Court of Civil Appeals of Texas. El Paso. Dec. 8, 1927.

Rehearing Denied Jan. 19, 1928.

1. **Building and loan associations ⊛⟿33(5)—Money deducted from loan by loan company in amount expended for borrower in acquiring necessary contracts held not "interest" charge, making loan usurious (Acts 34th Leg. 1st Called Sess. [1915] c. 5).**

Where, as condition precedent to obtaining loan from savings and loan contract company organized under Acts 34th Leg. 1st Called Sess. (1915) c. 5, it was necessary for borrower to own matured contracts of such company, deduction from amount loaned of money expended for borrower in acquiring such contracts held not interest charge, which would make loan usurious.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest (on Money).]

2. **Building and loan associations ⊛⟿33(5)—Borrower's intention and belief that innocent contract was usurious held not to make it so.**

Intention of one borrowing from savings and loan contract company that deduction from loan of amount expended by such company to acquire necessary contracts for borrower should be bonus for loan, making contract usurious, held not to make contract, which was otherwise innocent, usurious; borrower's intention being immaterial, since lender is party who must suffer penalty.

3. **Building and loan associations ⊛⟿26—Loan company paying bonus to one surrendering contract may do so for account of one desiring contracts as basis for loan.**

Under provision, in contract of co-operative savings and loan contract company, providing that contract holder surrendering contract should receive bonus of $150, company may make such payment for account of one who desires to acquire contracts as basis of loan as well as in redemption of contracts.

4. **Building and loan associations ⊛⟿26—Loan company may reissue surrendered contract to one making payments in lump sum instead of issuing new contract.**

Where contract of co-operative savings and loan contract company provided that contract holder should receive bonus on surrendering contract, company may reissue surrendered contract to one paying in lump sum required number of payments rather than cancel surrendered contract and issue new one, and contract thus reissued is valid between company and party to whom it was reissued.

5. **Evidence ⊛⟿157(5)—Certified copy of declaration of trust, creating general partnership, held inadmissible, though original was lost.**

In action by co-operative savings and loan contract company to recover on borrower's notes, admission of certified copy from deed records of declaration of trust of plaintiff *held* error, though proof was first made of loss of original, where effect of declaration was to create general partnership; there being no law requiring or authorizing record of articles of general partnership.

6. **Appeal and error ⊛⟿1050(1)—Error in admitting certified copy from deed records of declaration of trust of loan company held harmless, where terms thereof were not in issue (Rev. St. 1925, art. 2010).**

In action by receiver of co-operative savings and loan contract company to recover on borrower's notes, error in admitting certified copy from deed records of declaration of trust of plaintiff creating general partnership *held* harmless, where terms of declaration were not in issue, and right to recover not dependent thereon, and plaintiff's right to recover in capacity in which he sued was not put in issue by sworn plea, as required by Rev. St. 1925, art. 2010.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by G. G. Wright, receiver of the United Home Builders of America, against the Abilene Christian College. Judgment for plaintiff, and defendant appeals. Affirmed.

Wagstaff, Harwell & Wagstaff, of Abilene, and Callaway, Dalton & Callaway, of Dallas, for appellant.

John W. Pope and J. L. Zumwalt, both of Dallas, for appellee.

HIGGINS, J. This suit was brought by the appellee, Wright, as receiver of the United Home Builders of America, hereinafter called the Home Builders, against the Abilene Christian College, to recover upon the latter's notes covering three different loans made to appellant and to foreclose deeds of trust upon lands given to secure the payment of the notes.

No point is here presented respecting the judgment rendered upon two of the loans. Therefore they will not be further noticed. The controversy arises over loan No. 91, which

was evidenced by eight notes for the aggregate sum of $39,100, payable to the order of W. M. Webb and A. A. Cocke, and to their successors in trust, trustees for the Home Builders, bearing interest from date at the rate of 3 per centum per annum. Three of the notes were paid, and the suit is upon the remaining five of the series. Various payments had been made; the amounts and dates of payment being agreed to. Upon trial, a peremptory charge was given to find in favor of the plaintiff for the sum of $15,-836.39, less a credit of $2,300, which credit plaintiff upon the trial admitted should be allowed.

Verdict was returned, and judgment rendered in accordance with the charge given.

The amount for which judgment was rendered is the correct amount due upon the notes, unless the defendant's plea of usury should be sustained. This plea is based upon a deduction of $9,200 made by the Home Builders from the amount paid to the defendant when the loan was finally closed.

As shown by certificate of the commissioner of insurance and banking, the Home Builders complied with all the requirements of the law relating thereto, and was authorized to transact the business of a co-operative savings and loan contract company, under the provisions of chapter 5, Acts of the First Called Session of the Thirty-Fourth Legislature. Chapter 25B, title 25, Complete Texas Statutes 1920.

The Home Builders issued and sold what it designated as "3 per cent. loan and home purchasing contracts," or "Class A" contracts, one of which is copied in full in the record. Some of its provisions are as follows:

"The United Home Builders of America, with its home office in the city of Dallas, state of Texas, as evidenced by these presents, agrees to pay the sum of one thousand ($1,000.00) dollars hereinafter called the 'face value' of this contract, at the home office of the United Home Builders of America, to Ben Franklin Fair of the city of Shreveport, county of Caddo, state of Louisiana, hereinafter called the contract member, or to his heirs and assigns, together with the pro rata share of profits of this contract, subject to the following terms, privileges, and conditions, to wit: Face value, $1,000.00.

"This contract is made in consideration of the written, printed, and signed application of the contract member, whose name and signature is hereto attached, and in consideration of the payment of ten ($10.00) dollars, 'membership fee,' to the United Home Builders of America, the receipt of which is hereby acknowledged, and a further payment of a monthly installment of ten ($10.00) dollars on the contract, on or before the 15th day of each succeeding calendar month, after the date of this contract, until the loan is secured, all in accordance with the printed and written terms and conditions set out herein, and subject to all the benefits, provisions, and requirements printed on the back hereof, which are hereby referred to and made a part of this contract as fully as if re-

1 S.W.(2d)—46

cited here. After the loan has been made, the contract member, whose signature is hereto attached, agrees to pay $1.00 a month on each $100.00 borrowed, plus 3 per cent. interest, until the full amount of principal and interest have been paid.

"When the contract member has paid the required 'installments' for six consecutive months, he shall be entitled, as conditioned herein, to receive a loan out of the loan or trust fund equal to the face value written herein, provided this contract has been reached and funds accumulated for a loan in its regular, numerical order as provided for in sections one (1), two (2), three (3) and four (4) of the 'terms and conditions' hereof. * * *

"The contracts in this 'class' are to be held and managed by a board of trustees—W. M. Webb and A. A. Cocke—operating as the United Home Builders of America, under a declaration of trust dated January 2, 1919, and recorded in the office of the county clerk of Dallas county, Tex.; and it is agreed that the contract members and beneficiaries in this 'class,' for the mutual benefit of all parties concerned, do hereby consent that the operation, control, and management of the business, under the mutual co-operative contracts in this 'class' shall be by the said trustees—W. M. Webb and A. A. Cocke—operating as the United Home Builders of America, under their by-laws, rules, and regulations. * * *

"In witness whereof the United Home Builders of America have caused this contract to be issued and signed by the proper officer of the board of trustees, at their home office in the city of Dallas, Tex., and their seal attached hereto, and both parties have accepted and become a party to this contract, according to the terms and tenor thereof, and affixed their hands this 20th day of August, 1919, being the identical date of the application therefor. United Home Builders of America, by W. M. Webb, President & General Manager. [Seal.] B. F. Fair, Contract Member."

 *    *    *    *    *    *    *    *

"Terms and Conditions.

"Whenever in this contract the word 'trustees' is used, the United Home Builders of America is meant, and where the words 'contract member' are used, the contract holder, party hereto, is meant.

"Section 1.

" 'Class,' How Governed. This contract is one of a 'class' of like contracts, designated and called 'class A' contracts. Priority of position of contracts which shall be entitled to a loan in this 'class' shall be fixed and governed by the date of the application therefor. * * * "

"Section 5.

"Guaranteed Investment Feature: Should the contract member not desire a loan, when notified that the loan is ready under the terms of this contract, or in lieu of any other option offered herein, he may surrender this contract to the trustees, the United Home Builders of America, within thirty days from the time written notice is given him or her, and receive therefor, on each one thousand dollars ($1,000.00) 'face value' thereof, all the money paid in by the contract member in monthly installments on

this contract, and in addition thereto he will be paid a bonus or profit of one hundred fifty dollars ($150.00). Contracts for larger or smaller amounts will be paid the same rate of profit in proportion to face value. Or, if the contract member prefers, he may sell his contract to any other person, or persons; and if not in arrears, have it transferred on the books of the United Home Builders of America by paying a transfer fee of ten cents on each one hundred dollars ($100.00) covered by this contract."

"Section 15.

"Transfer Privilege. At any time the contract member is not in default as to any obligations or conditions required herein, under the terms, conditions and requirements as set forth in this contract and the application therefor, this contract can be assigned on the books of the United Home Builders, to any person indicated by the contract member, upon the payment of a fee of ten (10) cents for each one hundred ($100.00) dollars face value hereof, at the time such transfer is made, giving name and post office address of such transferee. * * * "

"Section 22.

"Terms and Conditions Under Which the Loan or Trust Fund will be Loaned and Repayments of Same. Upon maturity of this contract, and when the 'Contract Member' would exercise the loan privilege of this contract, he must furnish the trustee," etc.

The foregoing contract bears this indorsement:

"For value received I hereby sell, transfer, and assign all my right, title, claim, and interest in the within contract to the person indicated in the following assignment form:

"(Please fill in carefully and plainly.)"

ing, the Dallas court upheld the validity of the contract, and held that the claims of those whose contracts had been forfeited for failure to make payments in accordance with the provisions of the contract, be expunged. In Justice Vaughan's able opinion in that case he points out that these contracts were authorized by the legislative act above mentioned, were issued after having been first approved by the commissioner of insurance and banking, as the law required, and were valid. In that case a writ of error was denied. We refer to it for the purpose of showing the validity of the loan and home purchasing contracts. In this connection it may be said that appellant does not question the validity of the contracts.

[1] In order to make the loan for $39,100 to the defendant, it was necessary for it to own 46 contracts upon which the requisite number of payments had been made. It did not own any such contracts. According to the theory of appellee, the deduction of $9,200 from the amount paid the defendant was for the purpose of acquiring for defendant's account 46 such contracts at the rate of $200 per contract. The contracts were assignable, and the indorsement upon the contract above quoted shows that it was assigned to defendant. It is shown that 45 more such contracts were so assigned, and the evidence shows that all had been acquired by the Home Builders at the time the loan was closed. The deduction of the amount paid out was simply repayment to the Home Builders of money which it had expended for defendant in ac-

| By Whom Assigned. (Owner Must Sign.) | To Whom Assigned. (Purchaser.) | Local Address of Purchaser. | Date of Transfer. | Transfer Registered. | Secretary's Indorsement. | Number Assignment. |
|---|---|---|---|---|---|---|
| B. F. Fair | Sidney T. Davilla | Marshall, Tex. | 1/24/21 | 30 | A. A. Cocke | 1637 |
| S. T. Davilla | Abilene Christian College | Abilene, Tex. | 2/8/21 | 43 | A. A. Cocke | 2332 |

It also has this indorsement:

"Contract No. 710: Applied on Bonus Loan No. 91. Class 'A' No. 710. $1,000.00. United Home Builders of America. Home office, 404 Andrews Building, Dallas, Texas. A national loan, savings and investment society 3 per cent. loan and home purchasing contract. Issued to S. T. Davilla, Marshall, Texas. Settled for under Section No. 5. Date March 2, 1921. $320.00."

Barlow v. Wright (Tex. Civ. App.) 279 S. W. 593, was a contest in the Home Builders receivership between parties to whom these class A contracts had been issued. The trial court had ordered a pro rata distribution of the assets of the Home Builders among the contract holders based upon the total amount contributed by each holder, including those whose contracts had been forfeited under section 9. Upon appeal by holders whose contracts had matured and were in good stand-

quiring the 46 contracts, and not an interest charge.

J. S. Arledge, appellant's president, negotiated the loan for it. He testified:

"The Abilene Christian College agreed to pay a bonus to the United Home Builders of America of $9,200. * * *

"The Abilene Christian College did not own any of the contracts on which that loan was based or to be based. I did not authorize or empower the United Home Builders of America or anybody acting for them as their agents, after we had got that loan or before we had got the loan to go out in the open market and buy 46 contracts for the Abilene Christian College as the basis for that loan. I did not have any interest in or care anything about whether they bought any such contracts or not. * * *

"I think that I did obtain loan No. 293; I obtained three loans in all from the United Home Builders of America, and I guess that that is the number of one of them. I got loan No. 293 on some matured contracts. I do not know

where I got those matured contracts on loan No. 293. I know that we bought some matured contracts, but I do not know where we bought them. I got two loans, but I do not know which is which. * * *

"Mr. Free and myself were advised by the United Home Builders of America that this was a bonus loan. I don't know that we were advised that these contracts provided for $150 bonus in each contract—for matured contracts, they called it a bonus loan, and we knew that that was what the discount was for, to get the bonus; they had two kinds of contracts, one of them was a bonus loan, and the other was a direct loan. On the matured contracts I understood that it was $200 on each contract. I think they made us buy 46 contracts, matured contracts, as a basis for this $39,100 loan. * * *

"They told me that the bonus on each one of those bonus contracts would be as much as $200, and I agreed to pay that $200 on each contract as a bonus for this $39,100; that is, me and my associates agreed to pay that $200 on each contract as a bonus for getting the $39,100; we paid that to get the loan. I think that they did tell me that it was $200 on each contract. I will state that Mr. Free and myself did not go out over the state and buy 46 contracts and pay for them out of the college's money. We never did pay a nickel for those 46 contracts. * * *

"I did not know about this transaction, and that I could not borrow money from the United Home Builders of America without first having matured contracts. They told us that this $200 for each contract was the bonus on the loan; that is the way I understood it. (Witness was handed a number of contracts of the United Home Builders of America.) This contract No. 710 seems to have been assigned by B. F. Fair to Sidney T. Daniels. Then Fair indorsed the contract to A. A. Cocke, and then it was indorsed by Mr. Cocke to the Abilene Christian College. The other contracts that you have handed me are indorsed over to the Abilene Christian College. All of these 46 contracts have been assigned or indorsed over to the Abilene Christian College. * * *

"All of the 46 contracts that you have just handed me have been transferred to the Abilene Christian College. * * *

"I understand that that was what had to be done in order to get the loan for the Abilene Christian College. I understood that we had to have matured contracts before I could borrow money from the United Home Builders of America. * * *"

[2] The testimony of the witness is in some respects contradictory, but he finally admitted he knew the college had to have matured contracts to get the loan. He denied that he authorized the Home Builders to acquire such contracts, but, under the facts shown, we think such authority was necessarily implied. But, whether it should be implied or not, it is clear the Home Builders did acquire the contracts, and same were used as the basis of the loan to the college, and, with the college president's consent deducted the $9,-200 to pay for same from the proceeds of the notes. It may be the president intended this deduction to be purely a bonus for the loan, and thus intended a usurious contract. But such intention on his part does not necessarily make the contract usurious. In Bank v. Waggener, 9 Pet. 399, 9 L. Ed. 171, it was said:

"In construing the usury laws, the uniform construction in England has been (and it is equally applicable here) that to constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for or to take usurious interest; for if neither party intended it, but act bona fide and innocently, the law will not infer a corrupt agreement. Where, indeed, the contract, upon its very face, imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur. But where the contract on its face is for legal interest only, there it must be proved, that there was some corrupt agreement, or device or shift, to cover usury; and that it was in the full contemplation of the parties."

See, also, Henry v. Sansom, 2 Tex. Civ. App. 150, 21 S. W. 69; Bomar v. Smith (Tex. Civ. App.) 195 S. W. 964.

And in 27 R. C. L. 222, it is said:

"If the transaction was by the borrower supposed and intended to be usurious, but was by the lender intended and supposed not to be so, as he is the party who would suffer any penalty that might be imposed, the transaction must be regarded as innocent."

Under these authorities the transaction in question must be regarded as innocent, even though appellant's president intended the deduction of $9,200 to be purely as a bonus for the loan.

[3] But it is insisted by appellant that, under section 5 of the contract, the Home Builders were obligated to the original holders of the 46 contracts to redeem the same if they did not want a loan. It contends "that, when any contract holder surrenders his contract, and receives back from the company the amount of money which he had theretofore paid in, together with his bonus of $150, as guaranteed to him by section 5 of the contract, such contract was extinguished, and all rights under it were merged in the company, and the company could not thereafter give it any life or validity for any purpose"; that requiring appellant to repay the amounts so paid out was simply a subterfuge to evade the law of usury. But section 5 also authorizes the assignment of the contracts, and we see no reason why the Home Builders in making such payment could not do so for the account of one who desired to acquire the contracts as the basis of a loan rather than in redemption of the same.

[4] Nor do we see any reason why a surrendered contract could not be reissued to one who would pay in a lump sum the required number of payments rather than can-

celing the surrendered contract and issuing a new one. A contract thus reissued would be valid between the Home Builders and the party to whom it was reissued, though such procedure might infringe to some extent upon the loan privileges of other contract holders.

Bearing in mind. that these contracts were valid contracts authorized by law, and approved by the commissioner of insurance and banking, that ownership by appellant of the 46 matured contracts was a condition precedent to obtaining the loan, we see nothing in the transaction which would make the purchase price of the contracts an interest charge, and make the loan usurious.

We are therefore of the opinion there was no material issue of fact raised by the evidence, and the court did not err in giving the peremptory charge.

[5] Upon the trial, appellee offered in evidence a certified copy from the deed records of the declaration of trust of the Home Builders; proof having been first made of the loss of the original. The copy was admitted over defendant's exception duly reserved. The effect of the declaration was to create a general partnership. Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 554. There is no law requiring or authorizing the record of articles of general partnerships. It was therefore error to admit the certified copy. Southwestern, etc., v. Anderson, 106 Tex. 46, 155 S. W. 1176.

[6] However, the error was harmless. The right of the plaintiff to recover in the capacity in which he sued was not put in issue by sworn plea, as required by article 2010, R. S. The right of the Home Builders was shown by the notes, deeds of trust, and other documentary evidence properly admitted in evidence. Recitals in these instruments 'show that the Home Builders operated under a declaration of trust,· if such fact be material. The terms of the declaration were not in issue, and the right to recover not dependent thereon. The error in admitting the certified copy was harmless, and is not reversible. Howard v. Britton, 71 Tex. 286, 9 S. W. 73; Peck v. Morgan (Tex. Civ. App.) 156 S. W. 917.

Reference has been made above to a credit of $2,300, which plaintiff, upon the trial, admitted should be allowed. The facts with respect to this credit are not altogether clear. With respect thereto appellee in his brief says:

"The evidence in the case showing, and uncontradicted, that the United Home Builders of America did not pay out to the original contract holders, who owned and matured the 46 contracts involved in this loan, the sum of $200, but did pay out to the original owners of the said 46 contracts involved in this loan the sum of $150 in cash, under section 5 thereof, and in the trial of the case it was developed that, if the entire $200 on each contract should be paid back to the Home Builders, $50 upon each of the 46 contracts would go into the common treasury, and thereupon the appellee, receiver, admitted in the trial of this cause that the note for $39,100, should carry a further credit in the sum of $2,300; that is, $50 upon each of the 46 contracts, being the excess over and above the $150 provided for in section 5 of said contracts. The court, in its peremptory instructions to the jury, instructed the jury to find for the plaintiff below in the sum of $15,836.39, less a credit of $2,300, as of October 4, 1926, which credit was instructed to be given upon this particular loan for the original sum of $39,100. Also see agreement of all parties in this litigation as to additional credits."

The agreement referred to reads:

"It is agreed by all parties to this litigation that all of the notes sued on in this cause have received all credits and offsets as payments made thereon by the defendant, to which all of said notes are entitled, and, in addition to such credits as payments made on said notes, that the defendant has been credited on said notes for all amounts included therein that represent a charge over and above $150 called bonus, as provided for in section 5 of the contracts, that is, the obligations herein sued upon have been allowed an additional credit representing the difference between the bonus agreed to be paid, and the amount of money paid out by the United Home Builders of America, to the original owners of the said 46 contracts as provided for under section 5 thereof."

Appellant, in its supplemental brief, says:

"The receiver admits that the $50 per contract which the company charged in the face of said notes, aggregating $2,300, was an improper charge."

We assume this item of $2,300 was really an interest charge. Appellant asserts that under Shropshire v. Commerce Farm Credit Co. (Tex. Com. App.) 280 S. W. 181, this charge rendered the contract usurious, because it was interest for the first year, which, added to the contract rate of 3 per cent., would make an interest charge for the first year of more than the amount allowed by law. The interest at the contract price would be $1,173 per annum, which, added to $2,300, would total $3,473. Deducting $2,300 from $39,100 leaves a balance of $36,800, upon which interest could be lawfully charged at the rate of 10 per cent. per annum, or $3,680. It is thus apparent that the contract is not usurious upon this theory.

Affirmed.