## CADE et ux. v. UNION CENTRAL LIFE INS. CO. et al.

### No. 192.

District Court, N. D. Texas, San Angelo Division.

May 8, 1934.

Wilkinson & Wilkinson, and Collins, Jackson & Snodgrass, of San Angelo, Tex., for complainants.

Locke, Locke, Stroud & Randolph and Albert Sidney Johnson, all of Dallas, Tex., for respondents.

ATWELL, District Judge.

In 1912, the complainants appealed to the respondent insurance company for a loan to retire an indebtedness against their home place. The loan was granted, and in 1922 the new amortization plan that had been worked out by the respondent for the use of its customers was made use of to retire the 1912 indebtedness. The amount of the unpaid principal, at that time, was $2,650. The repayment of this was planned in installments of $290.30 each, extending over a period of twenty years. These installments included a part of the principal and a payment of interest at 9 per cent. At the expiration of twenty years, the total to be returned to the lenders was and would have been $5,888.78. $3,238.78 was interest.

The acceleration provision, leaving out unimportant provisions, for its study, provided: "Now, if the said Thomas J. Cade shall well and truly pay, or cause to be paid, to the order of said, The Union Central Life Insurance Company, its successors or assigns, the said several sums of principal and interest, according to the tenor and effect of said notes * * *; and if default shall be made in the payment of any of said notes, or any interest thereon, or any portion thereof, when the same shall become due and payable, * * * then said notes, together with all accrued interest thereon, shall, at the option of said company, its successors or assigns, become at once due and payable, without notice, and the said Louis Breiling, Trustee * * * shall be, and is hereby authorized and empowered * * * to sell the said property at public auction for cash, * * *, and to receive the proceeds of said sale, which shall be applied, as follows: * * * Second. To the payment of said notes to the amount of said principal sum

\* \* \* and all accrued interest thereon \* \* \*. Third. The remainder, if any there shall be, after payment of \* \* \* principal \* \* \* and the interest of said note shall be paid to Thomas J. Cade or his heirs or assigns."

Mr. and Mrs. Cade maintain that under this written contract, the lender may demand and enforce by sale, out of the proceeds of the property, in the case of default, not only the principal, but the $3,238.78 interest, whether the time had run for its earning.

They contend that the Texas usury statute and the interpretation and enforcement thereof by the Texas courts require the lender to respond to statutory penalties if the contract for the use of the money shows the intent to exact an usurious rate.

The respondent places a different interpretation upon the contract and maintains that such a reading is harsh, unreasonable, and oppressive. It claims that it has never sought to collect usury in this or any other loan, and that the contract was only meant to give it the right to collect the principal and the earned interest, rather than any unearned interest.

It presented testimony tending to show that it had been engaged in lending money in Texas for more than forty years; had loaned many millions of dollars and had made many thousands of loans. That in all of its transactions, it constantly refused unearned interest and maintained that it had no right and no desire to collect that which had not really accrued. Testimony was also offered tending to show that when the amortization plan was placed in use, its scriveners and attorneys worked over the forms and debated the result of the wording therein, so as to preclude any thought that its contracts might be construed as permitting the collection of unaccrued interest. While maintaining that the contract between it and the complainants did not justify the conclusion that it authorized or provided for the collection of that which had not been earned, still, it pleaded, if such a result were apparent to the court, that it was the result of the mistake of the parties. That neither it nor the complainant intended that any such construction or privilege should result, and having offered testimony in its own ranks to support such a plea, it fortified the same by the testimony of the complainants that they had nothing of that sort in mind at the time of the execution of the instrument.

■ While one will not be permitted to explain away the result of plain words by offering to show an harmless intent, the rule is, I think, that where the words of a contract are such that two constructions may be given it, one of which is lawful, and the other of which is unlawful, testimony of cleanliness of purpose may be offered. Such cases as Lloyd v. Scott, 4 Pet. (29 U. S.) 224, 7 L. Ed. 833; Bank of U. S. v. Waggener, 9 Pet. (34 U. S.) 399, 9 L. Ed. 163; Omaha Hotel Company v. Wade, 97 U. S. 13, 24 L. Ed. 917; Call v. Palmer, 116 U. S. 98, 6 S. Ct. 301, 29 L. Ed. 559; In re Mansfield Steel Corp'n (D. C.) 30 F.(2d) 832; Equitable Trust Co. v. A. C. White Lumber Co. (D. C.) 41 F.(2d) 60; Gunby v. Armstrong (C. C. A.) 133 F. 417; Medical Arts Building v. Southern Finance & Development Co. (C. C. A.) 29 F.(2d) 969; Atwood v. Deming Investment Co. (C. C. A.) 55 F. (2d) 180, so suggest. While the statement must be considered in its appropriate limitations, it may also be conceded that usury rests in an intent to exact more than the legal limit for the use of money.

■ Likewise, if parties erroneously draft their contract for repayment so as to show a viciousness of intent that was not in the heart, equity may relieve it of such wording. Hunt v. Rousmanier's Administrators, 8 Wheat. (21 U. S.) 174, 5 L. Ed. 589; Allen v. Hammond, 11 Pet. (36 U. S.) 63, 9 L. Ed. 633; Bradford v. Union Bank of Tennessee, 13 How. (54 U. S.) 57, 14 L. Ed. 49; Equitable Safety Insurance Co. v. Hearne, 20 Wall. (87 U. S.) 494, 22 L. Ed. 398; Ivinson v. Hutton, 98 U. S. 79, 25 L. Ed. 66; Snell v. Insurance Company, 98 U. S. 85, 25 L. Ed. 52; Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963; Elliott v. Sackett, 108 U. S. 132, 2 S. Ct. 375, 27 L. Ed. 678; Adams v. Henderson, 168 U. S. 573, 18 S. Ct. 179, 42 L. Ed. 584; Philippine Sugar Estates Development Co. v. Government, 247 U. S. 385, 38 S. Ct. 513, 62 L. Ed. 1177; Moffett Co. v. City of Rochester (C. C.) 82 F. 255; affirmed, 178 U. S. 373, 20 S. Ct. 957, 44 L. Ed. 1108; Great American Insurance Co. v. Johnson (C. C. A.) 25 F.(2d) 847; Cert. Denied, 278 U. S. 629, 49 S. Ct. 29, 73 L. Ed. 548; Columbian National Life Ins. Co. v. Black (C. C. A.) 35 F.(2d) 571, 71 A. L. R. 128; Clarksburg Trust Co. v. Commercial Casualty Insurance Co. (C. C. A.) 40 F.(2d) 626.

In Shropshire v. Commerce Farm Credit Company (Tex. Civ. App.) 266 S. W. 612; Id. (Tex. Com. App.) 280 S. W. 181; Id., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 12, 84 A. L. R. 1269, it was said: "The court must give to the terms of the contract,

834

if fairly susceptible of it, a construction that will make it legal, but has no right to depart from the terms in which it is expressed to make legal what the parties have made unlawful. * * * if the transaction was such as to render the intention of the parties doubtful, the court would adopt that construction which would attribute to them a legal intention."

This thread of righteousness in construction runs through all of the Texas cases. Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332; Hughes v. Bryson (Tex. Civ. App.) 29 S.W.(2d) 898; Spiller v. Bell (Tex. Civ. App.) 55 S.W.(2d) 634; Clement v. Scott (Tex. Civ. App.) 60 S.W.(2d) 258; Walker v. Temple Trust Co. (Tex. Civ. App.) 60 S.W.(2d) 826; Reynolds Mortgage Co. v. Thomas (Tex. Civ. App.) 61 S.W.(2d) 1011; American Trust Co. v. Orson (Tex. Civ. App.) 65 S.W.(2d) 779; Aetna Life Ins. Co. v. Foster (Tex. Civ. App.) 66 S.W.(2d) 428; Marble Savings Bank v. Davis, 69 S.W.(2d) 812, by the Texarkana Court of Civil Appeals, 1934; Bankers' Life Co. v. Miller (Tex. Civ. App.) 68 S.W.(2d) 574.

There is nothing surprising in the watchfulness of the courts for the protection of the borrower from the stealthy, or the premeditated usurious lender. There is reason, too, in the refusal to consider one a wrongdoer who has never done wrong and who protests at a charge of wrongdoing, especially when the language relied upon to show such evil is susceptible of a different and a proper construction. The one who maintains one's right to the "pound of flesh" doctrine stands in a different group.. The one who joins in the use of such words as convey but one meaning also has his place.

It will be noticed, reverting to a consideration of the contract quoted above, that the expression, "sums of principal," and the parceling of the funds after a sale, if the borrower fails to meet his payments, support the thought that the insurance company is pressing here. While a surface reading of the acceleration clause might justify the conclusion that unearned interest, since it was included in the installment notes for all of the period, should be paid, a more critical and charitable construction, which is justified by the paths above explored, results in the conviction that the respondents are right. They did not intend it. The contract does not plainly show that they intended it. The testimony of all parties negatives it.

The result is that the complainants' bill must be dismissed. The respondents' cross-action granted and a foreclosure decreed.